SUSAN B. MEYER (SBN 204931)
smeyer@grsm.com
HAZEL MAE B. PANGAN (SBN 272657)
hpangan@grsm.com
HANNAH E. BROWN (SBN 311158)
hbrown@grsm.com
GORDON REES SCULLY
MANSUKHANI, LLP
101 W. Broadway, Suite 2000
San Diego, CA 92101
Telephone: (619) 696-6700
Facsimile: (619) 696-7124

CORT SCHULTZ (SBN 181503)
c.schultz@pacificaseniorliving.com
Pacifica Senior Living LLC
1775 Hancock St. Suite 200
San Diego CA 92110
Telephone: 619.296.9000 x. 185
Fax: 619.296.9090

*Attorneys for Defendant*
*Pacifica Senior Living Management LLC*

UNITED STATES DISTRICT COURT

CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| SCOTT HARGIS d/b/a SCOTT HARGIS PHOTO, an individual,<br><br>Plaintiff,<br><br>vs.<br><br>PACIFICA SENIOR LIVING MANAGEMENT LLC, a California limited liability company, and DOES 1 through 10<br><br>Defendants. | CASE NO. 2:22-cv-06989-MCS-PD<br><br>**MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF DEFENDANT'S MOTION FOR SUMMARY JUDGMENT, OR IN THE ALTERNATIVE, PARTIAL SUMMARY JUDGMENT**<br><br>Hearing Date: July 3, 2023<br>Hearing Time: 9:00 a.m. |

Gordon & Rees Scully Mansukhani LLP
101 W. Broadway, Suite 2000
San Diego, CA 92101

# TABLE OF CONTENTS

I.    INTRODUCTION ...................................................................................................5

II.   BACKGROUND ....................................................................................................6

III.  LEGAL STANDARD.............................................................................................9

IV.   ANALYSIS............................................................................................................10

    A.   Pacifica Is Entitled to Summary Judgment on Plaintiff's Allegations of Willfulness ...................................................................................................10

        1.   Legal Standard Re: Willfulness ....................................................10

        2.   Pacifica Operated Under a Reasonable Belief that It Could Use the Photographs as Provided by Atria..............................................11

        3.   Pacifica's Prompt Take Down Show Lack of Willfulness .......12

    B.   Any Potential Damages Should Be Calculated On a "Per Property" Rather Than "Per Photograph" Basis ..................................................................15

    C.   Pacifica Has an Implied License to the Photographs............................20

V.    CONCLUSION.....................................................................................................23

Gordon & Rees Scully Mansukhani LLP
101 W. Broadway, Suite 2000
San Diego, CA 92101

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF MOTION FOR SUMMARY JUDGMENT                    Case No. 2:22-cv-06989-MCS-PD

## TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*Anderson v. Liberty Lobby*,
    477 U.S. 242 (1986)..................................................................................9

*Celotex v. Catrett*,
    477 U.S. 317 (1986)..................................................................................9

*Coogan v. Avnet, Inc.*,
    No. CV040621PHXSRB, 2005 WL 2789311 (D. Ariz. Oct. 24, 2005)..................15, 17

*Crispin v. Christian Audigier, Inc.*,
    839 F. Supp. 2d 1086 (C.D.Cal. 2011) ................................................20

*Danjaq LLC v. Sony Corp.*,
    263 F.3d 942 (9th Cir. 2001) .................................................................12

*Erickson Prods., Inc. v. Kast*,
    921 F.3d 822 (9th Cir. 2019) .................................................................10

*Evergreen Safety Council v. RSA Network Inc.*,
    697 F.3d 1221 (9th Cir. 2012) ........................................................11, 13

*Frank Music Corp. v. Metro–Goldwyn–Mayer, Inc.*,
    772 F.2d 505 (9th Cir. 1985) .................................................................11

*Grady v. Swisher*,
    No. 11-CV-02880-WYD-KLM, 2014 WL 3562794 (D. Colo. July 18, 2014) ......................17

*Greenberg v. Nat'l Geographic Soc'y*,
    No. 97–3924–CIV, 2003 WL 25841579 (S.D. Fla. Feb. 18, 2003)........................................16

*Hansen v. United States*,
    7 F. 3d 137 (9th Cir. 1993) ......................................................................9

*Masterfile Corp. v. Country Cycling & Hiking Tours by Brooks, Inc.*,
    No. 06 Civ. 6363(SAS)(FM), 2008 WL 313958 (S.D.N.Y. Feb. 4, 2008)..........................17

*MCA Television Ltd. v. Feltner*,
    89 F.3d 766 (11th Cir. 1996) .................................................................16

*Oliver v. Meow Wolf, Inc.*,
    No. CV 20-237 KK/SCY, 2022 WL 4132706 (D.N.M. Sept. 12, 2022)..........................20, 21

*In re Oracle Corp. Sees. Litig.*,
    627 F.3d 376 (9th Cir. 2010) ..................................................................9

MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF MOTION FOR
SUMMARY JUDGMENT                        Case No. 2:22-cv-06989-MCS-PD

Gordon & Rees Scully Mansukhani LLP
101 W. Broadway, Suite 2000
San Diego, CA 92101

*Photographic Illustrators Corp. v. Orgill, Inc.*,
    953 F.3d 56 (1st Cir. 2020) ...................................................................20

*Playboy Enterprises, Inc. v. Sanfilippo*,
    No. 97-0670-IEG (LSP), 1998 WL 207856 (S.D. Cal. Mar. 25, 1998)..................15, 16, 17

*Small Justice LLC v. Xcentric Ventures LLC*,
    873 F.3d 313 (1st Cir. 2017) .................................................................21

*Stross v. NextLuxuryDotCom LLC*,
    No. 2:21-cv-01181-JVS, 2022 WL 1840338 (C.D. Cal. Feb. 3, 2022) ...................13

*Tang v. Putruss*,
    521 F. Supp. 2d 600 (E.D. Mich. 2007).....................................................16

*Taylor Holland LLC v. MVMT Watches, Inc.*,
    No. 2:15-CV-03578-SVW-JC, 2016 WL 6892097 (C.D. Cal. Aug. 11, 2016)...............10, 20

*Washington Shoe Co. v. A–Z Sporting Goods Inc.*,
    704 F.3d 668 (9th Cir. 2012) .................................................................10

*Yellow Pages Photos, Inc. v. Ziplocal, LP*,
    795 F.3d 1255 (11th Cir. 2015) ..............................................................17

**Statutes**

17 U.S.C. § 504(c) ...............................................................................10

17 U.S.C. § 504(c)(1)........................................................................15, 16

17 U.S.C. § 504(c)(2)...........................................................................10

Copyright Act of 1976 .......................................................................10, 15

**Rules**

Fed. R. Civ. P. 56................................................................................9

**Other Authorities**

William F. Patry, Patry on Copyright § 5:131 (2021) .......................................20

Gordon & Rees Scully Mansukhani LLP
101 W. Broadway, Suite 2000
San Diego, CA 92101

-4-

## I.    INTRODUCTION

This is a case involving a display of photographs of several senior living facilities on the website by the company who owns those facilities.    The photographs in this case are straightforward images of the inside and outside of various senior living buildings, for example:





(ECF No. 1-1.)

Plaintiff was hired to take the photos by Atria Management Co. ("Atria"), the property manager for the building owner at the time.  Plaintiff licensed the photos to Atria.  Defendant Pacifica Senior Living Management LLC ("Pacifica") then acquired these senior living home facilities and used the images on its website to promote the living facility (exactly as Atria had), with the understanding that the photographs were part of the acquisition.  There is nothing on these photos indicating to Pacifica that they were copyrighted; they were simply just images of the properties it was purchasing.

/ / /

Gordon & Rees Scully Mansukhani LLP
101 W. Broadway, Suite 2000
San Diego, CA 92101

Once Pacifica was notified by Plaintiff's representative that it was using 16 of Plaintiff's copyrighted photos, Pacifica took all 16 down within a month.  Still, Plaintiff brought suit claiming willful infringement of 43 separate photos.  Pacifica was never informed that more copyrighted photos remained on the site (beyond the original 16) until this lawsuit.

Pacifica moves for summary judgment on three independent issues: (1) that Pacifica did not engage in "willful" infringement; (2) that the number of copyrighted "works" is not 43, but 8, which is the number of locations photographed by Plaintiff; and (3) that Pacifica permissibly used the photos under an implied license.

## II.    BACKGROUND

Plaintiff Hargis alleges that he is an interiors and architectural photographer.  UMF 1.  In 2014, 2018, and 2019, Plaintiff photographed eight senior living home properties that at the time were owned by various entities related to Atria, who also managed the properties.  UMF 5.  The photographs were of the outside and inside of the buildings.   UMF 6.  Atria and Hargis entered into eight separate contracts for these eight locations, and each contract granted Atria a license to use the photographs.  UMF 7.  These facilities were in various cities: Burlingame, Fresno, Sun City, Menifee, Sterling, Rancho Penasquitos, Encinitas, and Chula Vista.  UMF 5.   Atria displayed the Photographs on its websites for marketing of properties in order to entice customers to view, visit, and potentially become residents.  UMF 9.

Throughout 2020 and 2021, Pacifica bought seven senior living facilities from Atria or Atria-related entities. These facilities were in various California and Virginia cities, including the following seven locations: Fresno, Menifee, Encinitas, Chula Vista, Rancho Penasquitos, Burlingame, and Sterling.  UMF 14.  These facilities were the same ones allegedly photographed by Plaintiff and referenced in his Complaint.   UMF 15.   At the time of purchase, Plaintiff's

MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF MOTION FOR SUMMARY JUDGMENT                    Case No. 2:22-cv-06989-MCS-PD

Gordon & Rees Scully Mansukhani LLP
101 W. Broadway, Suite 2000
San Diego, CA 92101

photographs were displayed and used on the Atria website.  As part of the sale transaction and acquisition activities for the properties, Plaintiff's photographs were provided to Pacifica, consistent with the usual process for acquisitions.  UMF 16.

Indeed, in all prior acquisitions of properties from any third party, Pacifica has always received from that party photos (including attendant rights, licenses, and/or permissions to use the photos) of the property to use on the community website, as contemplated and intended as part of the acquisition transaction.  UMF 17.  The websites for these seven new facilities were designed by third party, G5.  UMF 18.  G5 allegedly displayed 43 of Plaintiff's images on the seven websites.  *See generally Compl.* Pacifica displayed the photographs in a "gallery" fashion whereby the user would scroll through all photos on one page.  Like Atria, Pacifica displayed the Photographs on its websites for marketing of properties in order to entice customers to view, visit, and potentially become residents.  UMF 24.

On March 30, 2021, Plaintiff's representative Image Rights emailed pacificasocial@gmail.com, contending: "Scott Hargis's copyrighted images (Image IDs: hargis_180613_7290; hargis_180621_7972; hargis_180621_7835; hargis_180621_8040; hargis_180621_7829; hargis_180613_7353; hargis_180613_7336; hargis_180613_7369; hargis_180613_7207; hargis_180613_7306; hargis_180613_7276; hargis_180621_7948; hargis_180621_7914; hargis_180613_7239; hargis_180621_8014; and hargis_180621_7874) were discovered on the website www.pacificamenifee.com for which there is no record of a license."  The email asked whether a license existed or for a "fee of US\$ 32,000.00" to resolve the matter.  UMF 27.

This email was needlessly confusing to the marketing representative who received it, having never heard of Image Rights and unsure who "Scott Hargis" was or what the referenced 17 Hargis "IDs" referred to.  In fact, it seemed to be spam.  Pacifica's marketing director Lucie Punches immediately nevertheless

-7-

Gordon & Rees Scully Mansukhani LLP
101 W. Broadway, Suite 2000
San Diego, CA 92101

forwarded the Image Rights email to Collin Foote, who works for Pacifica's web designer G5, as Ms. Punches was unsure whether the email was spam or if there were any issues with the website that G5 had designed. UMF 28.   Mr. Foote responded that all stock images on the website were licensed through Getty Images but recommended Pacifica's counsel review the e-mail.  UMF 29.

Pacifica's legal team was equally confused, as it knew Pacifica had purchased the properties from Atria's affiliates, with Atria acting as the property manager, and believed that the purchase included the photos.  UMF 31.  Pacifica corresponded with Image Rights, and when Image Rights provided Pacifica with a copy of the Hargis/Atria invoice (upon Pacifica's request), that same day, Pacifica requested the images be removed from the Pacifica websites as well as if there was any use on Yelp and Facebook.  UMF 37.  Soon afterwards, on April 26, 2023, Pacifica informed the Image Rights representative: "I am told that the images have been removed now that we have notice of this matter.  If that is not correct let me know and I will follow up with our marketing team."  UMF 38.   Image Rights reviewed and responded the images had indeed been removed from the webpage, noting "however, they are still on the server for the website … we recommend them being removed from the server (if you have access) in order to avoid any future infringements."   UMF 39.   Pacifica then removed the photos from the server.  UMF 41, 42.  Both the websites and the server were completely clear of the 16 identified Hargis photos by May 12, 2021 (less than 1.5 months after Pacifica first received notice).  *Id.*

Pacifica declined to pay the unreasonable Image Rights fee, and then heard nothing further from Plaintiff or Image Rights until this lawsuit, wherein Plaintiff alleges not only infringement of the above-referenced 16 images, but for a total of 43 Photographs (26 of which Image Rights had not mentioned in its correspondence with Pacifica).  (ECF No. 1.)  The 43 Photographs are hereinafter referred to as "the Photographs."

Gordon & Rees Scully Mansukhani LLP
101 W. Broadway, Suite 2000
San Diego, CA 92101

### III.    LEGAL STANDARD

Summary judgment should be granted when there is no genuine issue of material fact and the moving party is entitled to judgment as a matter of law. Fed. R. Civ. P. 56. A genuine issue exists when the evidence is such that a reasonable factfinder could return a verdict for the non-moving party. *Anderson v. Liberty Lobby,* 477 U.S. 242, 248 (1986). The moving party has the burden of demonstrating the absence of a genuine issue of fact for trial. *Id.* at 256. If the moving party satisfies this burden, the party opposing the motion must designate specific facts showing that there remains a genuine issue for trial. *Id.* at 257. However, conclusory allegations unsupported by factual data are insufficient to create a triable issue of fact so as to preclude summary judgment. *Hansen v. United States,* 7 F. 3d 137, 138 (9th Cir. 1993) (citing *Marks v. Dept. of Justice,* 578 F.2d 261, 263 (9th Cir. 1978)).

When the moving party does not have the burden of proof at trial on a dispositive issue, the moving party may meet its burden for summary judgment by showing an "absence of evidence" to support the non-moving party's case. *Celotex v. Catrett,* 477 U.S. 317, 325 (1986); *see also In re Oracle Corp. Sees. Litig.,* 627 F.3d 376, 387 (9th Cir. 2010) (finding that where the nonmovant bears the burden of proof at trial, the movant need only prove that there is no evidence to support the nonmovant's case.) In ruling on a summary judgment motion, the Court's function is not to weigh the evidence, but only to determine if a genuine issue of material fact exists. *Anderson,* 477 U.S. at 255.

/ / /

/ / /

/ / /

/ / /

/ / /

/ / /

MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF MOTION FOR SUMMARY JUDGMENT                                    Case No. 2:22-cv-06989-MCS-PD

Gordon & Rees Scully Mansukhani LLP
101 W. Broadway, Suite 2000
San Diego, CA 92101

## IV.    ANALYSIS

### A.    Pacifica Is Entitled to Summary Judgment on Plaintiff's Allegations of Willfulness

Plaintiff alleges Pacifica conducted "at least 43 willful acts of copyright infringement." (Compl. ¶ 24.)  In support of this claim of "willfulness," Plaintiff alleges:

- Pacifica's acts of infringement are willful because, inter alia, it is a sophisticated for-profit business with full knowledge of the strictures of federal copyright law and the basic requirements for licensing copyrighted content for commercial exploitation. In fact, and among other things, as the owner of various copyrights and trademarks, Pacifica actively polices and vigorously protects its own intellectual property rights from infringement, as demonstrated by the '©' copyright notice featured at the bottom of its website. (Compl. ¶ 15.)

- Moreover, and most notably, despite repeated notice by representatives of Plaintiff to Pacifica of its acts of infringement, many of the Photos remained featured on Pacifica's Websites following the provision of such specific notice. As such, Pacifica's infringing conduct is unmistakably willful. (Compl. ¶ 16.)

### 1.    Legal Standard Re: Willfulness

Under section 504, willful infringers are liable for statutory damages in a amount between $750 and $150,000 per work.  *See* 17 U.S.C. § 504(c).  The plaintiff bears the burden of proving willfulness.  *See* 17 U.S.C. § 504(c)(2).  To establish willfulness under the Copyright Act, a plaintiff must show: "(1) that the defendant was actually aware of the infringing activity, or (2) that the defendant's actions were the result of 'reckless disregard' for, or 'willful blindness' to, the copyright holder's rights."  *Washington Shoe Co. v. A–Z Sporting Goods Inc.*, 704 F.3d 668, 674 (9th Cir. 2012) (quoting *Louis Vuitton Malletier, S.A. v. Akanoc Sols., Inc.*, 658 F.3d 936, 944 (9th Cir. 2011)).  Evidence that the defendant

-10-

"should have known" that its acts constituted infringement does <u>not</u> constitute willfulness. *Erickson Prods., Inc. v. Kast*, 921 F.3d 822, 833 (9th Cir. 2019).

This is a proper issue for summary judgment if no reasonable trier of fact could find that the defendant acted with reckless disregard or willful blindness. *Taylor Holland LLC v. MVMT Watches, Inc*., No. 2:15-CV-03578-SVW-JC, 2016 WL 6892097, at *14 (C.D. Cal. Aug. 11, 2016).

### 2. Pacifica Operated Under a Reasonable Belief that It Could Use the Photographs as Provided by Atria

Pacifica was operating under a reasonable belief that it was using the Hargis images lawfully via its purchase from Atria, and that all photographs on the websites designed by G5 were licensed. Pacifica and G5's policy was to use only licensed images on the Pacifica websites. UMF 20. As was its policy, in its contract with G5, Pacifica agreed that it would not provide G5 with any materials for the website that infringe any intellectual property rights of any third party. UMF 21. Thus, any failure to search the copyright database for the images or take any further action does not mean its actions were willful. Willfulness does not exist where allegedly infringing works are used under a reasonable belief that the infringer possesses a license or implied license. *Evergreen Safety Council v. RSA Network Inc*., 697 F.3d 1221, 1228 (9th Cir. 2012).

In *Frank Music Corp. v. Metro–Goldwyn–Mayer, Inc*., 772 F.2d 505, 515 (9th Cir. 1985), plaintiff acquired the right to produce a musical stage production of the dramatic play *Kismet*. Plaintiff then granted MGM's predecessor a license to produce a musical motion picture based on plaintiffs' play. MGM then premiered a musical revue entitled *Hallelujah Hollywood*, and part of the play was entitled "Kismet." Plaintiffs sued, arguing that *Hallelujah Hollywood* infringed their rights in *Kismet*. As to damages, plaintiffs argued the infringement was "conscious and deliberate," the district court disagreed, and the Ninth Circuit affirmed. "Defendants believed their use of Kismet was protected under MGM Grand's

-11-

Gordon & Rees Scully Mansukhani LLP
101 W. Broadway, Suite 2000
San Diego, CA 92101

ASCAP license. Although their contention ultimately proved to be wrong, it was not implausible. Defendants reasonably could have believed that their production was not infringing plaintiffs' copyrights, and, therefore, the district court was not clearly erroneous in finding that their conduct was not willful."

Like MGM, Pacifica reasonably believed that it had permission to use the photographs, as doing so was industry standard to use a seller's marketing material following the purchase of a property, and because Pacifica had come into possession of the photographs, apparently via Atria. UMF 16.  Pacifica's internal documents show this reasonable belief, and an administrator assured others: "The photographer that they represent lists Atria as one of their clients on their website. When we purchase these facilities it should include these photos. We purchased both of these facilities from Atria. So we should be able to get this sorted out." UMF 31.

The fact that Image Rights was asserting otherwise does not mean Pacifica was acting willfully in using the Photographs until it received further proof from Image Rights.   Indeed, "[i]ntellectual property rights are often disputed. To hold that willfulness must be inferred whenever an alleged infringer uses an intellectual property in the face of disputed title would turn every copyright claim into willful infringement and would improperly discourage many legitimate, good faith transactions."  *Danjaq LLC v. Sony Corp.*, 263 F.3d 942, 959 (9th Cir. 2001).

### 3.    Pacifica's Prompt Take Down Shows Lack of Willfulness

Plaintiff next contends that Pacifica's conduct was willful because some of the photos remained on the Pacifica websites after the Image Rights correspondence.  Instead, in the words of Image Rights, Plaintiff's representative, Plaintiff "acted promptly" to remove the images from their website once notified of them by Image Rights.  UMF 43.

On March 30, 2021, Pacifica first received notice of Image Rights of alleged infringement of "Scott Hargis's copyrighted images (Image IDs:

MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF MOTION FOR SUMMARY JUDGMENT                    Case No. 2:22-cv-06989-MCS-PD

Gordon & Rees Scully Mansukhani LLP
101 W. Broadway, Suite 2000
San Diego, CA 92101

1  hargis_180613_7290;    hargis_180621_7972;    hargis_180621_7835;

2  hargis_180621_8040;    hargis_180621_7829;    hargis_180613_7353;

3  hargis_180613_7336;    hargis_180613_7369;    hargis_180613_7207;

4  hargis_180613_7306;    hargis_180613_7276;    hargis_180621_7948;

5  hargis_180621_7914;    hargis_180613_7239;hargis_180621_8014;    and

6  hargis_180621_7874."

7      Pacifica's marketing personnel, like any reasonable person, had no idea what

8  this meant, and thought the email may even be spam. UMF 28.  Nonetheless, she

9  instantly reached out to G5 and Pacifica's representative Brian Nord.  Mr. Nord

10  then requested further information from Image Right and tried to call Image Rights

11  a few times to get more information. UMF 34 (Image Rights representative

12  informing Pacifica she had missed "t[w]o calls" from Pacifica because she was out

13  of the office).  Pacifica and Image Rights then discussed the matter further, with

14  Pacifica requesting further information UMF 35. The photos were off the website

15  completely less than a month after being notified by Image Rights.  UMF 39.  Even

16  if this short amount of time showed "willfulness" it is clear that Pacifica was

17  working reasonably to take down the photos.  "Continued use of a work even after

18  one has been notified of his or her alleged infringement does not constitute

19  willfulness so long as one believes reasonably, and in good faith, that he or she is

20  not infringing."  *Evergreen Safety Council v. RSA Network Inc.*, 697 F.3d 1221,

21  1228 (9th Cir. 2012).

22      In *Stross v. NextLuxuryDotCom LLC*, No. 2:21-cv-01181-JVS (AFMx),

23  2022 WL 1840338 (C.D. Cal. Feb. 3, 2022), plaintiff Stross notified defendant

24  Cornwall of alleged infringement and then filed suit.  In support of its claim for

25  willfulness, Stross provided screenshots to the court showing that the photos

26  remained on Cornwall's website after Stross notified it of the infringement.  In its

27  defense, Cornwall "presented evidence to show that he took prompt remedial

28  action and believed that the photos had been removed."  This evidence showed that

Gordon & Rees Scully Mansukhani LLP
101 W. Broadway, Suite 2000
San Diego, CA 92101

"the same day Stross notified him of the infringement, Cornwell deleted one of the images from the server himself and instructed the company's web host to immediately remove the remaining two files. That same day, the web host twice confirmed that the photos were removed."

The court found it was therefore "reasonable for Cornwell to believe that the web host had actually removed the photos on his instruction." Even though the photos were not in fact removed that day, "Cornwell has sufficiently rebutted Stross's allegation that Cornwell knowingly continued infringing his work. This evidence also suggests that Cornwell did not intentionally lie to Stross when he told him that the photos had been removed because he reasonably believed this to be true. This further mitigates a finding of willfulness." Moreover, the Court noted that the fact that Cornwall's regular practice was to pay for licensed photography shows that it was not acting in reckless disregard of Stross' rights. "Thus, the Court finds that Cornwell's infringing actions were not willful."

After Image Rights presented Pacifica with the Hargis/Atria invoice for the first time, Pacifica began take down efforts. UMF 35-37. Like Cornwall, Pacifica immediately requested its web designer take down the photographs, and informed Image Rights of such. UMF 35-38. Image Rights then confirmed that all of those photos were taken down, only noting that the photos remained on the "server", merely "recommending" that the photos come off the server but only "if" Pacifica had access. UMF 39. Pacifica then worked with G5 to get the photos off the server. UMF 41-42.

There is no evidence that Pacifica was trying to deceive Image Rights or that it delayed in any way in removing the photos following notice from Image Rights. Instead, the evidence shows a good faith effort that resulted in a complete take-down of all photos and even took down all photos from the "server" even though there was no allegation that this server storage constituted infringement. *See* UMF 41-42.

-14-

Gordon & Rees Scully Mansukhani LLP
101 W. Broadway, Suite 2000
San Diego, CA 92101

1    Accordingly, Pacifica requests the Court enter summary judgment in its

2    favor finding that Plaintiff has not met its burden of showing entitlement to

3    enhanced damages for willfulness.

4    **B.    Any Potential Damages Should Be Calculated On a "Per**

5    **Property" Rather Than "Per Photograph" Basis**

6    Pacifica next moves for summary judgment on the number of "works" to

7    which Plaintiff is entitled damages.

8    The Copyright Act of 1976, as amended, provides that a copyright owner is

9    entitled to damages "for all infringements involved in the action, with respect to

10   any one work." 17 U.S.C. § 504(c)(1) (emphasis added). "The Act, however, does

11   not provide a definition for the term 'work.'" *Coogan v. Avnet, Inc*., No.

12   CV040621PHXSRB, 2005 WL 2789311, at *5 (D. Ariz. Oct. 24, 2005).

13   All 43 Photographs listed in the Complaint are registered in one "group"

14   under Copyright Registration Number VA 2-140-916.  UMF 3.  Plaintiff seeks

15   damages under the assumption that each photo constitutes a "work" and therefore

16   is entitled to 43 sets of statutory damages.  This position is inconsistent with the

17   law.  Accordingly, Pacifica requests summary judgment that there are eight

18   "works" because the 43 Photographs were taken in groups in eight properties as a

19   matter of law under the following authority.

20   In *Coogan*, plaintiff was a professional photographer who took photos of a

21   company's CEO Roy Valle.  Plaintiff registered the photographs "as an

22   unpublished 'collection' with the United States Copyright Office."  *Id.* at *1.

23   Defendant then used three of those photographs without permission.  *Id.* at *2.

24   Defendant moved for summary judgment on the issue of whether there was one or

25   three "works."  In analyzing this, the court noted "plaintiff's photographs involved

26   a single subject, a single photographer and a single location." *Id.* at *6. There was

27   "no evidence in the record that Plaintiff marketed the images to the public

28   separately. Rather, the photographs were taken at a single session, by a single

Gordon & Rees Scully Mansukhani LLP
101 W. Broadway, Suite 2000
San Diego, CA 92101

-15-

photographer, for a single purpose." The court also noted that plaintiff had registered all of the photographs as part of one "collection" which entitled each photograph to copyright protection, but, this does not mean that each photograph is deemed a "work." The court accordingly found that the three photographs constituted "a single work" within the meaning of 17 U.S.C. § 504(c)(1).

The *Coogan* court distinguished *Playboy Enterprises, Inc. v. Sanfilippo*, No. 97-0670-IEG (LSP), 1998 WL 207856 (S.D. Cal. Mar. 25, 1998), where Playboy sued the owners of a website which posted thousands of copyrighted images that had appeared in Playboy magazine. The defendant argued that because the images had first appeared as part of compilations—*i.e.* in Playboy magazine—the images within those compilations should not be counted as individual infringements. The court sided with Playboy, reasoning that:

> [A]lthough each of these images may have appeared in a singular issue of one of plaintiff's copyrighted publications, these images are subject to re-use and redistribution in accordance with various licensing arrangements. Furthermore, each image represents a singular and copyrightable effort concerning a particular model, photographer, and location. The fact that many of these images appeared together should not detract from the protection afforded to each individual effort. Furthermore, defendant marketed each one of these images separately.

Accordingly, the court held the defendant liable for the infringement of each individual image. *Id.*

The standard test as to what constitutes a "work" is whether each purported work has "independent economic value and is, in itself, viable." *MCA Television Ltd. v. Feltner*, 89 F.3d 766, 769 (11th Cir. 1996). This has been referred to the "independent economic value" test and has been applied by numerous courts to determined that groups of photos should be collectively treated as compilations under § 504(c)(1) of the Copyright Act and thus a single work for statutory damages purposes. *See Greenberg v. Nat'l Geographic Soc'y*, No. 97–3924–CIV,

Gordon & Rees Scully Mansukhani LLP
101 W. Broadway, Suite 2000
San Diego, CA 92101

-16-

2003 WL 25841579, at *3, *5–6 (S.D. Fla. Feb. 18, 2003) (applying the independent economic value test to plaintiff's 64 photos to find that they only represented four works for statutory damages purposes because they had been compiled into four National Geographic articles and registered by plaintiff in the Copyright Office as belonging to those four "collective works"); *Tang v. Putruss*, 521 F. Supp. 2d 600, 609–10 (E.D. Mich. 2007) (applying the independent economic value test to find that a series of photos of models wearing a line of dresses taken at a single session, by a single photographer, for a single purpose, *i.e.* to advertise the clothing line, was a single work); *Grady v. Swisher*, No. 11-CV-02880-WYD-KLM, 2014 WL 3562794, at *15 (D. Colo. July 18, 2014) ("Although Defendant posted 3259 separate Photographs and Videos on four websites, Plaintiff had previously chosen to register the Photographs and Videos with the Copyright Office as six compilations. The weight of authority compels the Court to find that, for the purpose of calculating statutory damages, Defendant's infringement of the 3259 Photographs and Videos from the six compilation copyrights only constitutes infringement of six works[.]"); *Masterfile Corp. v. Country Cycling & Hiking Tours by Brooks, Inc.*, No. 06 Civ. 6363(SAS)(FM), 2008 WL 313958, at *3 (S.D.N.Y. Feb. 4, 2008) (holding that four separate images copyrighted as a single compilation constituted infringement of "one work" when they were later posted by the defendant on one website); *Yellow Pages Photos, Inc. v. Ziplocal, LP*, 795 F.3d 1255, 1280 (11th Cir. 2015) (where photographs are "registered as collections under [a] heading name, and grouped together" on a registration application, this weighs in favor of a finding that each photo is not a "work." "[B]ecause YPPI created, marketed, published, registered, and repeatedly described its photos as 178 collections under 178 headings organized by subject matter, we affirm the district court's decision to treat each collection as a compilation, subject to only one award of statutory damages.").

/ / /

MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF MOTION FOR SUMMARY JUDGMENT                     Case No. 2:22-cv-06989-MCS-PD

Gordon & Rees Scully Mansukhani LLP
101 W. Broadway, Suite 2000
San Diego, CA 92101

The present case is like *Coogan* and the numerous cases cited above, and distinguishable from *Playboy*.     The 43 Photographs were taken by one photographer (Plaintiff) in groups at only 8 Atria locations.  UMF 5, 7.  Each of these 8 groups of photographs were taken in one setting, in one building, and subject to one invoice per group.  *Id.* Plaintiff's copyright registration itself even groups the photos based on when they were published.  UMF 3.

Further evidencing that the Photographs have no independent economic value, Plaintiff did not sell or market them to anyone but Atria.  UMF 10-12.  Indeed, Plaintiff admits that the only purpose of the Photographs was for Atria to use them to market the senior living properties.  UMF 9, 10. And, the only revenue Plaintiff has ever made from the Photographs is via Atria.  UMF 11.  No person has ever expressed an interest in the Photographs.  UMF 13.

Pacifica's display of the Photographs proves that they only have value when grouped together.  Pacifica did not display the photographs outside of the website.  UMF 23. When displaying them on the website, Pacifica did so only in a "gallery" fashion whereby the viewer would scroll through the entire gallery of Photographs and view them as a group.  UMF 24.  This is shown in Plaintiff's own Complaint exhibits, which show the photos were displayed in a "photo gallery" with a scroll across the bottom indicating that the user could move from one photo to the next:

/ / /

/ / /

/ / /

/ / /

/ / /

/ / /

/ / /

/ / /

/ / /

MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF MOTION FOR SUMMARY JUDGMENT                    Case No. 2:22-cv-06989-MCS-PD

**Gordon & Rees Scully Mansukhani LLP**
**101 W. Broadway, Suite 2000**
**San Diego, CA 92101**





(ECF No. 1-2, at p. 7 (red box added to show relevance).)

Each individual photo had no value to Atria, Pacifica, or anyone else. The only reason the photos have any value is because they were taken as a group and, as a group, used to market the specific senior home facility as a whole. No reasonable jury could determine that any person has any use for one of the photos alone, for example, it is implausible that this one photo has any value to anyone:

///

///

///

///

///

///

///

///

///

MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF MOTION FOR SUMMARY JUDGMENT                                    Case No. 2:22-cv-06989-MCS-PD



(ECF No. 1-1, at 7 (one of the photographs allegedly used by Pacifica).) It is inconceivable that someone besides the owner of the senior living home pictured would ever want to buy <u>one</u> photo of the home's living room or beauty salon. (Indeed, it has never happened.  UMF 13.)

Because the evidence shows the Photographs are only valuable when grouped into each location, Pacifica seeks summary judgement that the number of "works" allegedly infringed is eight.

## C.    Pacifica Has an Implied License to the Photographs

Plaintiff licensed the Photographs to Atria under eight separate invoices that provided the following, or something similar to the following:

> Upon payment in full of this invoice, Photographer grants a non-exclusive license to Atria Management Co to use the above images. License covers publication and display of images in the following media: World Wide Web, print collateral, broadcast and display, throughout the world. License is valid in perpetuity. Images may be submitted for entry in contests. The only line of credit to be associated with the images is 'www.scotthargisphoto.com'. License is not transferable. Third-party usage except as defined above, is not granted

/ / /

MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF MOTION FOR
SUMMARY JUDGMENT                                    Case No. 2:22-cv-06989-MCS-PD

Gordon & Rees Scully Mansukhani LLP
101 W. Broadway, Suite 2000
San Diego, CA 92101

> in this license. Front cover usage requires a supplemental license. National advertising requires a supplemental license.

*See* UMF 8.

While Pacifica acknowledges that the invoices did not grant the right to Atria to sublicense, and do not mention any rights to subsequent buyers of the property, it is implied. Generally, a written agreement "can have both express terms and implied terms." *Crispin v. Christian Audigier, Inc.*, 839 F. Supp. 2d 1086, 1092 (C.D.Cal. 2011). "A license (implied or otherwise) is an affirmative defense to copyright infringement." *Photographic Illustrators Corp. v. Orgill, Inc.*, 953 F.3d 56, 64 (1st Cir. 2020); *Taylor Holland LLC*, 2016 WL 6892097, at *4. A nonexclusive implied license exists when the circumstances "demonstrate that the parties intended that the work would be used for a specific purpose." 2 William F. Patry, Patry on Copyright § 5:131 (2021) (citations omitted).

The Court can decide as a matter of law that Atria had the ability to, and granted, Pacifica an implied license to the Photographs.

Case law supports Pacifica's position. In *Oliver v. Meow Wolf, Inc.*, No. CV 20-237 KK/SCY, 2022 WL 4132706, at *19 (D.N.M. Sept. 12, 2022), plaintiff agreed to install her copyrighted project "Space Owl" for an artists' collective called "Meow Wolf." Plaintiff installed her project for Meow Wolf at an exhibition called House of Eternal Return ("HoER"). Defendant MWI was then created as a combination of the "Meow Wolf" artists and MWI continued to display Plaintiff's work at HoER. Plaintiff sued MWI for exhibiting her copyrighted project without a license.

The court held that MWI "continued to display [the work] in the same way the prior licensees did, and because Defendant MWI falls within the original scope of the license as an entity operating the HoER, vesting the license in it has not

/ / /

/ / /

-21-

Gordon & Rees Scully Mansukhani LLP
101 W. Broadway, Suite 2000
San Diego, CA 92101

changed the scope of the license or harmed Plaintiff's retained IP rights in any way." The court found:

> And even though the license was initially granted to distinct legal entities, it is undisputed that these entities were displaying precisely the same work at precisely the same business. Thus, this case does not involve multiple companies running substantially different "sides" of a business and using different works for different purposes and in different ways. Rather, even viewing the facts in the light most favorable to Plaintiff, it involves multiple companies running a single business that has continuously used Plaintiff's single work as she intended it to be used.

*Id.* In sum: "[T]he license vested in Defendant MWI as a matter of law when it became an operator of the HoER" and the court granted summary judgment in Defendant's favor. *See also Small Justice LLC v. Xcentric Ventures LLC*, 873 F.3d 313, 323 (1st Cir. 2017) (affirming dismissal on summary judgment of infringement claim and explaining that "[u]ses of the copyrighted work that stay within the scope of a nonexclusive license are immunized from infringement suits." (citations omitted))

Similarly, here, Plaintiff licensed the Photographs to Atria with the knowledge and understanding that Atria would display the Photographs on its websites for marketing of properties in order to entice customers to view, visit, and potentially become residents. UMF 9. Pacifica then bought those exact properties, and the license vested in Pacifica upon that purchase. Like in *Oliver*, the vesting of the license to Pacifica is "necessary to effectuate the purpose of [the] license," *i.e.*, the marketing of the senior living properties. Indeed, Pacifica displayed the Photographs on the Pacifica websites for marketing of properties in order to entice customers to view, visit, and potentially become residents – the same as Atria. UMF 25. Pacifica's use of the photos falls into the scope of Atria's and in the way that was intended when Plaintiff took the photos. Pacifica's use of the photos was therefore permissible.

/ / /

Gordon & Rees Scully Mansukhani LLP
101 W. Broadway, Suite 2000
San Diego, CA 92101

## V.    CONCLUSION

For the foregoing reasons, Pacifica seeks summary judgment that: (1) Plaintiff is unable to demonstrate willful infringement and therefore is not entitled to enhanced damages; (2) the number of "works" allegedly infringed is eight, or no more than eight; and/or (3) Pacifica had a license to use the Photographs

Dated: May 26, 2023

GORDON REES SCULLY
MANSUKHANI, LLP

By:  _/s/  Susan B. Meyer_
Susan B. Meyer
Hazel Mae B. Pangan
Hannah E. Brown
Attorneys for Defendant
*Pacifica Senior Living Management LLC*

MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF MOTION FOR SUMMARY JUDGMENT                    Case No. 2:22-cv-06989-MCS-PD