John Tehranian (Bar No. 211616)
jtehranian@onellp.com
Christopher S. Skinner (Bar No. 342830)
cskinner@onellp.com
**ONE LLP**
23 Corporate Plaza
Suite 150-105
Newport Beach, CA 92660
Telephone:  (949) 502-2870
Facsimile:   (949) 258-5081

*Attorneys for Plaintiff,*
Scott Hargis, d/b/a Scott Hargis Photo

# UNITED STATES DISTRICT COURT

# CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| SCOTT HARGIS, d/b/a SCOTT HARGIS PHOTO, an individual,<br><br>Plaintiff,<br><br>v.<br><br>PACIFICA SENIOR LIVING MANAGEMENT, LLC, a California limited liability corporation; and DOES 1-10, inclusive<br><br>Defendants. | Case No.: 2:22-cv-06989-MCS-PD<br>*Hon. Mark C. Scarsi*<br><br>**MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF PLAINTIFF SCOTT HARGIS, D/B/A SCOTT HARGIS PHOTO'S MOTION FOR SUMMARY JUDGMENT**<br><br>Date:        July 3, 2023<br>Time:        9:00 a.m.<br>Courtroom: 7C |

**MEMORANDUM OF POINTS AND AUTHORITIES**

# TABLE OF CONTENTS

INTRODUCTION.................................................................................1

STATEMENT OF UNDISPUTED FACTS..............................................2

ARGUMENT......................................................................................5

    I.    Legal Standard..................................................................5

    II.   Defendant is Directly Liable for the Infringement of Plaintiff's

        Copyrighted Photos..........................................................6

        A.    Plaintiff Owns Valid Copyrights in and to the Photos...............6

        B.    Defendant Infringed the Photos When It Reproduced,

                Distributed and Publicly Displayed the Photos Wholesale and

                Without Authorization..................................................7

    III.   Defendant's Defenses Are Meritless.....................................9

    IV.   Defendant's Conduct Constitutes Willful Infringement.....................12

CONCLUSION..................................................................................18

MEMORANDUM OF POINTS AND AUTHORITIES

# TABLE OF AUTHOURITIES

**Page(s)**

**Cases**

*A & M Records, Inc. v. Napster, Inc.*,
239 F.3d 1004 (9th Cir. 2001)..................................................................6, 7

*Addisu v. Fred Meyer*,
198 F.3d 1130 (9th Cir. 2000)........................................................................6

*Anderson v. Liberty Lobby, Inc.*,
477 U.S. 242 (1986).........................................................................................6

*Anhing Corp. v. Thuan Phong Co.*,
2015 U.S. Dist. LEXIS 97019 (C.D. Cal. July 24, 2015) ...............................13

*Atlantic Recording Corporation v. Chan*,
94 Fed.Appx. 531, 2004 WL 626553 (9th Cir. 2004)....................................12

*Baxter v. MCA, Inc.*,
812 F.2d 421 (9th Cir. 1987)..........................................................................7

*Celotex Corp. v. Catrett*,
477 U.S. 317 (1986) ........................................................................................5

*Cincom Sys. v. Novelis Corp.*,
581 F.3d 431 (6th Cir. 2009)........................................................................10

*Coogan v. Avnet, Inc.*,
2005 U.S. Dist. LEXIS 25336 (D. Ariz. Oct. 24, 2005) .................................13

*Educational Testing Serv. v. Simon*,
95 F. Supp. 2d 1081 (C.D. Cal. 1999) ...........................................................10

*Feist Publ'ns, Inc. v. Rural Tel. Serv. Co.*,
499 U.S. 340 (1991) ........................................................................................6

*Friedman v. Live Nation Merch., Inc.*,
833 F.3d 1180 (9th Cir. 2016)........................................................................13

*Garcia v. Google, Inc.*,
786 F.3d 733 (9th Cir. 2015) (en banc)...........................................................6

**MEMORANDUM OF POINTS AND AUTHORITIES**

*Gardner v. Nike, Inc.*,
    279 F.3d 774 (9th Cir. 2002)....................................................................10

*Getty Images (US), Inc. v. Virtual Clinics*,
    2014 U.S. Dist. LEXIS 37611 (W.D. Wa. Mar. 20, 2014) .........................17

*Hakkasan LV, LLC v. Adamczyk*,
    2015 U.S. Dist. LEXIS 110307 (D. Nev. Aug. 19, 2015) ..........................17

*Jackson v. Odenat*,
    9 F. Supp. 3d 342 (S.D.N.Y. 2014).............................................................9

*John Wiley & Sons, Inc. v. Book Dog Books, LLC*,
    327 F. Supp. 3d 606 (S.D.N.Y. Aug. 17, 2018)..........................................15

*Louis Vuitton Malletier, S.A. v. Akanoc Solutions, Inc.*,
    658 F. 3d 936 (9th Cir. 2011) ....................................................................12

*Morris v. Young*,
    925 F. Supp. 2d 1078 (C.D. Cal. 2013) .......................................................8

*N.A.S. Import Corp. v. Chenson Enterprises, Inc.*,
    968 F.2d 250 (2d Cir. 1995)......................................................................12

*In re N.C.P. Mktg. Grp.*,
    337 B.R. 230 (D. Nev. 2005) .....................................................................10

*Nintendo of Am., Inc. v. Storman*,
    2021 U.S. Dist. LEXIS 148119 (C.D. Cal. Aug. 5, 2021) ..........................15

*Novelty Textile Mills, Inc. v. Joan Fabrics Corp*,
    558 F.2d 1093 (2d Cir. 1977).......................................................................8

*Pasillas v. McDonald's Corp.*,
    927 F.2d 440 (9th Cir. 1991).......................................................................8

*Peer Intern. Corp. v. Pausa Records, Inc.*,
    909 F. 2d 1332 (9th Cir. 1990)..............................................................12, 16

*Promotions, LLC v. Wright Bros.*,
    2017 U.S. Dist. LEXIS 70101 (S.D. Cal. May 8, 2017) ..............................11

*RCA/Ariola Int'l, Inc. v. Thomas & Grayston Co.*,
    845 F.2d 773 (8th Cir. 1988)......................................................................12

iii

**MEMORANDUM OF POINTS AND AUTHORITIES**

*Reed v. Ezelle Inv. Props.*,
   353 F. Supp. 3d 1025 (D. Or. 2018) ................................................................. 13

*Reno-Tahoe Specialty, Inc. v. Mungchi, Inc.*,
   2014 U.S. Dist. LEXIS 177168 (D. Nev. Dec. 19, 2014) ........................... 13, 16

*Sanrio, Inc. v. Torres*,
   2015 U.S. Dist. LEXIS 189051 (C.D. Cal. Jan. 5, 2015) ................................ 17

*Taylor v. List*,
   880 F.2d 1040 (9th Cir. 1989) ........................................................................... 5

*Three Boys Music Corp. v. Bolton*,
   21 2 F.3d 477 (9th Cir. 2000) ............................................................................ 8

*Three Boys Music Corp. v. Bolton*,
   212 F. 3d 477 (9th Cir. 2000) ............................................................................ 7

*UMG Recordings, Inc. v. Disco Azteca, Distributors, Inc.*,
   446 F. Supp. 2d 1164 (E.D. Cal. 2006) ........................................................... 12

*Unicolors, Inc. v. Urban Outfitters, Inc.*,
   853 F.3d 980 (9th Cir. 2017) ...................................................................... 7, 13

*Warrington v. Taylor*,
   2022 U.S. Dist. LEXIS 55312 (C.D. Cal. March 9, 2022) .............................. 16

*Yellow Pages Photos, Inc. v. Ziplocal, LP*,
   795 F.3d 1255 (11th Cir. 2015) ....................................................................... 13

**Statutes**

17 U.S.C. § 106 ......................................................................................................... 6, 7

17 U.S.C. § 201 ............................................................................................................. 6

17 U.S.C. § 401(d) ...................................................................................................... 11

17 U.S.C. § 410 .......................................................................................................... 6, 7

17 U.S.C. § 411 ............................................................................................................. 7

17 U.S.C. § 412 ............................................................................................................. 7

17 U.S.C. § 504 ........................................................................................................... 10

**MEMORANDUM OF POINTS AND AUTHORITIES**

17 U.S.C. § 505 ....................................................................................................... 7

Copyright Act .......................................................................................................... 12

**Other Authorities**

Fed. R. Civ. P. 56(a) ............................................................................................... 5

**MEMORANDUM OF POINTS AND AUTHORITIES**

## INTRODUCTION

This is a straightforward case of willful copyright infringement. As a matter of law, Plaintiff Scott Hargis, d/b/a Scott Hargis Photo, owns the copyrights to forty-three (43) photographs showcasing senior living communities (the "Photos") and Defendant commercially exploited the Photos without authorization, including, *inter alia*, by prominently reproducing, distributing, and publicly displaying them on seven websites owned and operated by Defendant— www.pacificaseniorlivingfresno.com, https://www.pacificamenifee.com, https://www.pacificaencinitas.com, https://www.pacificaseniorlivingburlingame.com, https://www.pacificabonita.com, https://www.pacificaranchopenasquitos.com, and https://www.pacificaseniorlivingsterling.com (collectively, the "Pacifica Websites")—to advertise and promote its senior living communities. Defendant, a sophisticated multi-million-dollar company with ready access to counsel and the wherewithal to conduct a massive asset purchase, used the Photos for commercial, promotional purposes after it acquired the actual senior living communities themselves. But Defendant never bothered to conduct any due diligence as to whether it had any rights to use the Photos. To the contrary, it never acquired any copyright right or interest in or to the Photos. Even after being explicitly informed of its infringement by Plaintiff and provided with clear documentation showing that it had no rights to exploit the Photos, Defendant brazenly continued to infringe Plaintiff's copyrights. Indeed, although Defendant received notice of its infringing activity in March of 2021 (and repeatedly thereafter), it was still continuing to infringe several of the Photos as of the date of the filing of the Complaint in this lawsuit—September 27, 2022—a whopping ***year and a half later***. As such, there is no triable issue of fact that Defendant acted at least with reckless indifference (if not outright disregard for the law) and is therefore liable for willful infringement.

/ / /

**MEMORANDUM OF POINTS AND AUTHORITIES**

The above facts are not in dispute—Defendant *concedes* that it reproduced, distributed, and publicly displayed high-resolution copies of the Photos wholesale without a license. Defendant claims only that it did not know its conduct infringed (which, given copyright's strict liability regime, is irrelevant to liability), but this is belied by a record rife with evidence of Defendant's willfulness. As no genuine dispute of material fact exists, summary judgment as to Defendant's liability for willful infringement of the Photos is warranted as a matter of law.

## STATEMENT OF UNDISPUTED FACTS

Plaintiff is a widely recognized architectural photographer based in Oakland, California, who employs traditional techniques that require minimal retouching to produce images capturing the authenticity of the depicted structures, distinguishing him from the larger photographic community and putting his services in high demand, allowing him to command substantial fees for his work. Statement of Uncontroverted Facts and Conclusions of Law filed herewith ("SOF") ¶¶ 1, 3. Plaintiff's photographs have appeared in numerous publications including *This Old House*, *Luxe Magazine*, *Dwell*, *The New York Times*, *The Wall Street Journal*, *Oakland Magazine*, *San Francisco Magazine*, *Diablo Magazine*, *Better Homes & Gardens*, *The San Francisco Chronicle*, and *The Los Angeles Times*, he is the author of the acclaimed book "The Essential Guide To Lighting Interiors," and he frequently travels throughout North America and the world on assignment. *Id.* ¶¶ 2, 4-5.

Starting in 2014 and ending in 2019, non-party Atria Senior Living requested that Plaintiff Scott Hargis create the Photos depicting its Fresno, Sun City, Encinitas, Chula Vista, Rancho Penasquitos, Burlingame, and Sterling locations in an idyllic and picturesque light. *Id.* ¶ 6. In creating the Photos by himself, Plaintiff made numerous creative decisions with respect to, *inter alia*, staging, lighting, and coloring. *Id.* ¶ 7.

Upon creating the Photos at each senior living facility, Plaintiff provided Atria with the Photos via email and an invoice for services rendered, wherein Plaintiff retained sole copyright ownership to the Photos but granted Atria a license for its own strictly limited use of the Photos. *Id.* ¶¶ 8-9. Unambiguously featured on each invoice was the following language: "License is not transferable. Third-party usage except as defined above, is not granted with this license." *Id.* ¶ 9. Each individual Photo was timely registered with the United States Copyright Office and, in the copyright registrations, Plaintiff is identified as the author and copyright claimant of the Photos. *Id.* ¶ 10. Embedded in each of the Photos is a copyright notice identifying Plaintiff as the author: "(c) 2018 Scott Hargis Photo." *Id.* ¶ 11.

In 2020, Defendant purchased the Fresno, Sun City, Encinitas, Chula Vista, Rancho Penasquitos, Burlingame, and Sterling senior living communities from Atria. *Id.* ¶ 12. Though the licenses to the Photos were expressly non-transferable and third-party usage was prohibited on their face, Defendant nonetheless made use of the Photos, including by reproducing, distributing, and publicly displaying them without consent on the Pacifica Websites, which Defendant owns, operates, and/or controls. *Id.* ¶¶ 13, 28.

By its own concession, Defendant neither sought nor obtained a license to use any of the Photos, and it utterly failed to conduct a shred of due diligence as to the ownership status or its rights to use the Photos prior to commercially exploiting them. *Id.* ¶¶ 14, 17. Indeed, Defendant admitted that it did not "inquire as to Atria's license or rights to the [Photos] when Atria provided the photos to [Defendant] and/or [Defendant's website designer]." *Id.* ¶ 14, Tehranian Decl. Ex. C. This was further confirmed in Defendant's internal emails, which demonstrated that Defendant did not make any inquiry until April 2021, ***after*** being apprised of its infringing conduct. *Id.* ¶ 17. Defendant claims that blindly believing that rights to the Photos were transferred in the acquisition of properties from Atria was

MEMORANDUM OF POINTS AND AUTHORITIES

reasonable, but this is of course belied by the fact that such licenses were expressly "not transferable." *Id.* ¶ 8.

On March 30, 2023, Plaintiff's licensing agent, ImageRights International, Inc. ("ImageRights"), first reached out to Defendant regarding Defendant's alleged infringement of sixteen of the Photos, which showcased the Manifee and Fresno senior living communities (the "First Infringing Set"), by featuring them on two of the Pacifica Websites—pacificamanifee.com and pacificaseniorlivingfresno.com. *Id.* ¶ 15. Instead of recognizing the seriousness of the matter upon receiving the correspondence from ImageRights, counsel for Defendant derisively and dismissively referred to the notice internally as "spam." *Id.* ¶ 16. Despite repeated communications with Defendant from Plaintiff's agents detailing the infringing nature of Defendant's conduct, providing specific rebuttals to Defendant's proffered defenses, and marshalling additional documentation to substantiate the meritorious basis for Plaintiff's infringement claim, Defendant continued to display the First Infringing Set on the Pacifica Websites, without license or consent. *Id.* ¶¶ 17-22.

While Defendant finally asserted that the First Infringing Set was removed from the Pacifica Websites on April 26, 2021, such representation was demonstrably false. *Id.* ¶ 22. Rather, as ImageRights discovered, and promptly informed Defendant again that day, the Photos in the First Infringing Set remained live on the Pacifica Websites. *Id.* ¶ 23.

On May 3, 2021, ImageRights reached out to Defendant yet again regarding the dispute, reminding Defendant that the First Infringing Set remarkably still remained active on Defendant's servers. *Id.* ¶ 24. Communications continued on May 6, 12, and 26, 2021, in which ImageRights reached out to Defendant regarding the First Infringing Set and Defendant's continued use thereof, still hoping (against all evidence) to resolve the matter short of litigation. *Id.* ¶¶ 25-27.

4

In response, Defendant continually maintained that its "in-house" attorney was reviewing the matter, but took no further actions to remediate the infringement. *Id.*

ImageRights reached out to Defendant one last time regarding this dispute on June 3, 2021. *Id.* ¶ 27. Defendant again reverted back to its argument that it purchased the rights to the Photos, despite being presented months earlier with incontrovertible evidence that it in fact did not. *Id.*

Despite months of back and forth, in early 2022, Plaintiff discovered that Defendant was infringing 27 additional Photos on the Pacifica Websites, in connection with the Encinitas, Chula Vista, San Diego, Burlingame, and Sterling locations *Id.* ¶ 28. In other words, despite Plaintiff's repeated notifications that the rights to the Photos never transferred to Defendant, Defendant never bothered to check its Websites for further unauthorized uses. Defendant clearly had no regard for Plaintiff's rights to the Photos and had chosen to continue infringing his work, or, at minimum, thoroughly burying its head in the sand.

Defendant never ceased infringing Plaintiff's work, so, left with no other option to protect his intellectual property rights, Plaintiff filed this suit on September 27, 2022. *Id.* ¶ 29. Remarkably, Defendant was still continuing to infringe numerous Photos at the time of filing. *Id.* ¶ 30.

## ARGUMENT

### I. Legal Standard

Summary judgment is appropriate where "the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to a judgment as a matter of law." Fed. R. Civ. P. 56(a). If the moving party has the burden of proof and meets its initial burden, the nonmoving party must identify specific facts, drawn from the materials on file, that show that an issue is genuinely disputed. *See Celotex Corp. v. Catrett*, 477 U.S. 317, 324 (1986). A nonmoving party cannot avoid summary judgment by relying solely on conclusory allegations that are

1  unsupported by factual data. *See Taylor v. List,* 880 F.2d 1040, 1045 (9th Cir.

2  1989).

3      Likewise, a scintilla of evidence or evidence that is merely colorable or not

4  significantly probative does not present a genuine issue of material fact. *Addisu v.*

5  *Fred Meyer*, 198 F.3d 1130, 1134 (9th Cir. 2000). A dispute is genuine only "if the

6  evidence is such that a reasonable jury could return a verdict for the nonmoving

7  party." *See Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 248 (1986). A fact is

8  "material" only if it "might affect the outcome of the suit under the governing

9  law." *Id.*

## II.  Defendant is Directly Liable for the Infringement of Plaintiff's Copyrighted Photos.

12      To establish a prima facie case of direct copyright infringement, a plaintiff

13  must demonstrate only that: (1) it owns valid copyrights; and (2) the defendant

14  violated one or more of the exclusive rights in 17 U.S.C. § 106. *See Feist Publ'ns,*

15  *Inc. v. Rural Tel. Serv. Co.*, 499 U.S. 340, 361 (1991); *A & M Records, Inc. v.*

16  *Napster, Inc.,* 239 F.3d 1004, 1013 (9th Cir. 2001). Those rights under Section 106

17  include, *inter alia*, the right to reproduce, distribute, and publicly display the

18  copyrighted work. 17 U.S.C. § 106. Both elements are established here beyond

19  dispute.

### A.    Plaintiff Owns Valid Copyrights in and to the Photos.

21      "Copyright in a work protected under [Title 17] vests initially in the author

22  [] of the work." 17 U.S.C. § 201(a). Moreover, "[i]n any judicial proceedings the

23  certificate of a registration made before or within five years after first publication

24  of the work shall constitute prima facie evidence of the validity of the copyright

25  and the facts stated in the certificate." 17 U.S.C. § 410.

26      It cannot be disputed that Plaintiff solely created and fixed the images and,

27  as such, authored each of the Photos, which are original and protectable, SOF ¶¶ 6-

28  7, and that, therefore, copyright ownership vested in him. *See* 17 U.S.C. § 201

(copyright ownership vests in a work's author); *Garcia v. Google, Inc.*, 786 F.3d 733, 744-45 (9th Cir. 2015) (en banc) (individual who fixes work in tangible medium is the author). He furthermore registered the Photos with the United States Copyright Office (thereby meeting the registration requirement under 17 U.S.C. § 411) and he did so within five years of publication. SOF ¶ 10. As such, the copyright registration constitutes prima facie evidence, and a presumption, of ownership and validity. 17 U.S.C. § 410(c); *see also Unicolors, Inc. v. Urban Outfitters, Inc.*, 853 F.3d 980, 988 (9th Cir. 2017) ("A certificate of registration from the U.S. Copyright Office raises the presumption of copyright validity and ownership.").[1]

**B.** **Defendant Infringed the Photos When It Reproduced, Distributed and Publicly Displayed the Photos Wholesale and Without Authorization.**

Infringement can be proven through direct evidence of copying, or absent such proof, plaintiff can show defendant had access to the work and that the two works are "substantially similar." *Three Boys Music Corp. v. Bolton*, 212 F. 3d 477, 481 (9th Cir. 2000). "The word 'copying' is shorthand for the infringing of any of the copyright owner's five exclusive rights described in § 106." *A&M Records, Inc. v. Napster Inc.*, 239 F.3d 1004, 1013 (9th Cir. 2001). "Absent evidence of access, a 'striking similarity' between the works may give rise to a permissible inference of copying." *Baxter v. MCA, Inc.*, 812 F.2d 421, 423 (9th Cir. 1987). But with regard to the identical works, if there is "slavish copying" of the infringed work, as is the case here, a substantial similarity analysis is

_____

[1] Plaintiff's timely registration entitles him to statutory damages of up to $30,000 per work infringed, or $150,000 if the infringement was willful, as is the case here (or, at his election and in the alternative, actual damages and profits attributable to the infringement according to proof) and his attorneys' fees. 17 U.S.C. §§ 412, 504, 505.

**MEMORANDUM OF POINTS AND AUTHORITIES**

unnecessary. *Novelty Textile Mills, Inc. v. Joan Fabrics Corp*, 558 F.2d 1093 n.4 (2d Cir. 1977).[2]

Here, copyright infringement is open and shut. Because Defendant reproduced exact copies of Plaintiff's Photos, the substantial similarity analysis is unnecessary. *See Morris*, 925 F. Supp. 2d at 1083-84. Defendant has *expressly admitted* to copying, distributing, and publicly displaying the Photos wholesale, including on the Pacifica Websites. Namely, Defendant has conceded that:

(1) it obtained copies of the Photos at some point around the time of its acquisition of several senior living communities which formed the subject matter of the Photos, but did *not* acquire any license to use the Photos, SOF ¶¶ 12-13, 28 (acquiring the Photos and displaying themon the Pacifica Websites); 9, 13-14, 17 (Defendant did not acquire a license to the Photos);

(2) it published the Photos on the Pacifica Websites, thereby reproducing, distributing, and prominently and publicly displaying the Photos in order to showcase its senior living facilities to prospective customers/tenants, despite not securing the necessary licenses, *Id.* ¶¶ 13, 28, 30;

(3) it reproduced, distributed and publicly displayed the First Infringing Set on the Pacifica Websites from at least March 23, 2021 until at least April 26, 2021,

---

[2] In determining whether works are substantially similar, or strikingly similar, the Ninth Circuit usually employs a two-part test: the extrinsic and intrinsic tests. *Three Boys Music Corp. v. Bolton*, 21 2 F.3d 477, 485 (9th Cir. 2000). Under the extrinsic test, plaintiffs must show overlap of "concrete elements based on an objective criteria." *Id.* The intrinsic test is subjective and asks whether the ordinary, reasonable person would find "the total concept and feel of the works" to be substantially similar. *Pasillas v. McDonald's Corp.*, 927 F.2d 440, 442 (9th Cir. 1991) (internal citations and quotations omitted). However, where, as here, there is evidence of direct, verbatim copying, a court "need not rely on evidence of access and substantial similarity to determine copying." *Morris v. Young*, 925 F. Supp. 2d 1078, 1083–84 (C.D. Cal. 2013) (concluding that defendant's verbatim reproduction of plaintiff's copyrighted photographs online obviated the need to look to evidence of access and substantial similarity to determine copying).

almost four weeks after first receiving actual notice that it did not have the requisite licenses to exploit the Photos *Id.* ¶¶ 13, 22;

(4) despite Defendant's assurances that the First Infringing Set had been removed from the Pacifica Websites after being put on notice of the infringing activity, Plaintiff's agents discovered that the infringements were still live, *Id.* ¶ 23; and

(5) in the midst of all this back and forth in which Defendant was on clear notice that its use of the Photos was infringing, Defendant had reproduced, distributed, and publicly displayed the Second Infringing Set, publishing them on the Pacifica Websites starting in January 7, 2022. *Id.* ¶ 28. Five of the Photos from the Second Infringing Set continued to be displayed on the Pacifica Websites even at the time of filing. *Id.* ¶ 30.

Second, even putting aside Defendant's admission to wholesale exploitation of the Photos, the undisputed evidence demonstrates infringement of Plaintiff's exclusive rights of reproduction, distribution, and public display. Indeed, Defendant does not dispute the screen captures which reflect true and correct copies of webpages on the Pacifica Websites evidencing unlawful, complete reproductions, distributions, and displays of the Photos. *Id.* ¶¶ 12, 28, 30. *See, e.g., Jackson v. Odenat*, 9 F. Supp. 3d 342, 352 (S.D.N.Y. 2014) ("[A] rational jury comparing the pictures and the images on the masthead could only reach one inescapable conclusion: the images on the masthead are substantially similar because they are exact copies.).

There is thus no triable issue that Defendant violated Plaintiff's exclusive copyright rights in the Photos, and summary judgment on liability is warranted.

## III. Plaintiff's Defenses Are Meritless.

Throughout this litigation, Defendant has asserted two primary defenses—Defendant attacks liability on the basis that it had an implied license, and damages

on the basis that it was an innocent infringer under 17 U.S.C. § 504(c).[3] Both defenses are wholly without merit.

First, Defendant's position that Atria granted an implied license to the Photos is unavailing. SOF ¶ 9 (the licenses were expressly non-transferable). It is black letter law that, as the licensee or assignee of an image, Atria can never grant more rights than it holds. *See Gardner v. Nike, Inc.*, 279 F.3d 774, 781 (9th Cir. 2002) (a license may not be assigned without the copyright holder's express consent because there is "strong policy reasons to place the burden on the licensee to get the licensor's explicit consent" and that "[p]lacing the burden on the licensee assures that the licensor will be able to monitor the use of the copyright."). It is furthermore an axiomatic principle of copyright law that copyright licenses are "unassignable absent express language to the contrary." *Cincom Sys. v. Novelis Corp.*, 581 F.3d 431, 436-67 (6th Cir. 2009) (copyright license did not transfer to successor company in merger, and successor company was therefore required to obtain licensor's written approval before engaging in use of copyrights); *In re N.C.P. Mktg. Grp.*, 337 B.R. 230, 235 (D. Nev. 2005) ("[T]he Ninth Circuit and other circuits have come to the conclusion that two other forms of intellectual property, copyrights and patents, are personal and assignable only with the consent of the licensor and therefore unassumable.").

Defendant's position is easily defeated here, where the licenses originally granted to Atria were facially and in the most clear language possible, "not transferable." SOF ¶ 9. Atria simply had no ability to grant Defendant a license to

---

[3] 17 U.S.C. § 504(c) provides that a statutory damages award may be reduced if the infringer "was not aware and had no reason to believe that his or her acts constituted an infringement of copyright." While Defendant has frivolously tried to evade liability by asserting its purported lack of scienter, copyright infringement is a strict liability tort. *See Educational Testing Serv. v. Simon*, 95 F. Supp. 2d 1081, 1087 (C.D. Cal. 1999). Accordingly, even if Defendant's conduct amounted to innocent infringement (and it did not), such innocence would, at most, allow the Court to reduce damages in its discretion.

the Photos absent express consent from Plaintiff, which Defendant never sought to obtain, and any argument that Defendant could assume such "not transferable" licenses as Atria's successor, or that it is purportedly some unevidenced "custom and practice," is at clear odds with black letter law.

Second, Defendant's "innocent infringement" defense is precluded as a matter of law. As set forth in 17 U.S.C. § 401(d): "[i]f a notice of copyright in the form and position specified by this section appears on the published copy or copies to which a defendant in a copyright infringement suit had access, then ***no weight shall be given to such a defendant's interposition of a defense based on innocent infringement in mitigation of actual or statutory damages*** . . . ." (emphasis added). *See also Plan P2 Promotions, LLC v. Wright Bros.*, 2017 U.S. Dist. LEXIS 70101, at *24 n.3 (S.D. Cal. May 8, 2017) (noting that proper copyright notice under 17 U.S.C. § 401(d) "negates a defense of innocent infringement"). Here, it cannot be reasonably disputed that Defendant had access to copies of Plaintiff's works with a copyright notice affixed. Each of the Photos provided to Atria, and which were subsequently provided to Pacifica, featured a copyright notice, "© 2018 Scott Hargis Photo" in the metadata embedded therewith. SOF ¶ 11. As such, the innocent infringement defense is statutorily precluded.

On top of this, the facts unequivocally preclude the assertion of the innocent infringement defense. The licenses were expressly "not transferable," *Id.* ¶ 9, so there is no basis for Defendant to have believed it could have assumed any copyright interest in the Photos (had it done the bare minimum of due diligence, it would have discovered this information). Moreover, Defendant continued to infringe the Photos well after receiving actual notice that its use was unauthorized. *Id.* ¶¶ 15-26, 28, 30. Such facts take Defendant well outside the scienter of an innocent infringer. Rather, as explained below, Defendant's conduct was willful as a matter of law.

MEMORANDUM OF POINTS AND AUTHORITIES

Based on the foregoing, Plaintiff is entitled to summary judgment on Defendant's implied license and innocent infringement defenses.

## IV. Defendant's Conduct Constitutes Willful Infringement.

As the Ninth Circuit has held, "[A] finding of 'willfulness' in [the copyright] context can be based on *either* 'intentional' behavior, or merely 'reckless' behavior." *Louis Vuitton Malletier, S.A. v. Akanoc Solutions, Inc*., 658 F. 3d 936, 944 (9th Cir. 2011) (citing *In re Barboza,* 545 F.3d 702, 707 (9th Cir. 2008)) (emphasis added). Thus, "[t]o prove 'willfulness' under the Copyright Act, the plaintiff must show (1) that the defendant was actually aware of the infringing activity, or (2) that the defendant's actions were the result of 'reckless disregard' for, or 'willful blindness' to, the copyright holder's rights." *Louis Vuitton,* 658 F. 3d at 944 (*citing Island Software & Computer Serv., Inc. v. Microsoft Corp*., 413 F.3d 257, 263 (2d Cir.2005)). Willfulness may be actual or constructive and need not be proven directly but may be inferred from the defendant's conduct. *N.A.S. Import Corp. v. Chenson Enterprises, Inc*., 968 F.2d 250, 252 (2d Cir. 1995). Furthermore, "[w]illful [in a copyright context] does not mean malicious." *UMG Recordings, Inc. v. Disco Azteca, Distributors, Inc.,* 446 F. Supp. 2d 1164, 1173-74 (E.D. Cal. 2006); *Atlantic Recording Corporation v. Chan*, 94 Fed.Appx. 531, 2004 WL 626553 (9th Cir. 2004) ("the 'knowledge' standard does not seem to require any such specific intent"); *RCA/Ariola Int'l, Inc. v. Thomas & Grayston Co.,* 845 F.2d 773, 779 (8th Cir. 1988) (the good faith analysis "is subject to the corollary that reckless disregard of the copyright holder's rights (rather than actual knowledge of infringement) suffices to warrant award of the enhanced damages."). Willfulness can appropriately be decided on summary judgment where the relevant facts are admitted or otherwise undisputed. *See Peer Intern. Corp. v. Pausa Records, Inc.,* 909 F. 2d 1332 (9th Cir. 1990).

Courts routinely hold that an infringer's failure to conduct a modicum of due diligence into a copyright holders' rights, as is the case here, evinces willful

infringement. *See, e.g., Unicolors, Inc.*, 853 F.3d at 992 ("[A] party may act recklessly by refusing . . . to even investigate or attempt to determine whether particular designs are subject to copyright protections"); *Friedman v. Live Nation Merch., Inc.*, 833 F.3d 1180, 1186 (9th Cir. 2016) (finding that defendant's approval procedures could amount to recklessness or willful blindness where defendant made no inquiry into whether third parties providing it with photos could also grant it the necessary rights in those Photos); *Anhing Corp. v. Thuan Phong Co.*, 2015 U.S. Dist. LEXIS 97019, at *56-57 (C.D. Cal. July 24, 2015) (finding trademark infringement willful where defendant knowingly sold products under phrase that it knew could constitute infringement but failed to consult legal counsel as to the propriety of its actions); *Yellow Pages Photos, Inc. v. Ziplocal, LP*, 795 F.3d 1255, 1272 (11th Cir. 2015) (failure to conduct due diligence before making commercial use of photos found to be willful); *Reno-Tahoe Specialty, Inc. v. Mungchi, Inc.*, 2014 U.S. Dist. LEXIS 177168, at *24 (D. Nev. Dec. 19, 2014) (defendant was willful where there was no evidence that "it took any affirmative action to ascertain whether its purchase and use of the image" from a third party "would violate another's copyright"); *Coogan v. Avnet, Inc.*, 2005 U.S. Dist. LEXIS 25336, at *15 (D. Ariz. Oct. 24, 2005) (infringing use of photographs outside scope of license was willful because defendants' mistaken belief as to the terms of the license were not reasonable: "the terms of Invoice were crystal clear"); *c.f. Reed v. Ezelle Inv. Props.*, 353 F. Supp. 3d 1025, 1036 (D. Or. 2018) ("If an infringer makes no attempt to inquire into whether the item was subject to copyright protection, the infringer is reckless or willfully blind.").

It is undisputed that Defendant infringed knowingly, or at the very least, with reckless disregard for Plaintiff's copyrights. Defendant's sole explanation for its infringing conduct is that it obtained copies of the Photos from Atria during the course of its acquisition of several senior living communities that were the subject matter of the Photos. But, as explained above, Defendant clearly obtained no

**MEMORANDUM OF POINTS AND AUTHORITIES**

copyright interest in the Photos. The invoices granting Atria such rights unequivocally stated: "License is not transferable." SOF ¶ 9. Had Defendant done the bare minimum investigation before using photographs that are clearly subject to copyright, it would have learned that Plaintiff's license to Atria was not transferable, and that it therefore needed to obtain written consent before using the Photos. *Id.* ¶¶ 14, 17-18. Defendant has put forth no evidence of ***any*** investigation done prior to using the Photos, which were clearly subject to copyright protection; to the contrary, internal emails demonstrate that April 2021—***after*** being apprised of its infringing conduct—was the first time Defendant made such inquiry. *Id.* ¶ 17. Such blatant failure alone constitutes willfulness.

If there was any doubt as to Defendant's willfulness based on the above, such doubt is summarily cleared up by Defendant's failure to properly respond to actual, express, and repeated notifications of its infringing conduct. As the record shows, Plaintiff's licensing agent ImageRights first reached out to Defendant regarding the First Infringing Set on March 30, 2021. *Id.* ¶ 15. Defendant dismissively and derisively referred to the ImageRights infringement notice as "spam," and then responded with obstruction and obfuscation. *Id.* ¶ 16. Namely, Defendant's Insurance and Claims Administrator, Brian Nord, went in circles with ImageRights, claiming that Defendant's use was valid despite no authority for such contention, and despite ImageRights providing Nord with clear documentation demonstrating that the licenses to the Photos were not transferable. *Id.* ¶¶ 19-22. Almost a month later, on April 26, 2021, Nord represented that the case was being referred to Defendant's in-house counsel, and falsely represented to ImageRights that the First Infringing Set was removed from the Pacifica Websites. *Id.* ¶ 22. Notwithstanding Nord's representations that the infringement ceased, Defendant's continued infringement was in fact extensive and obvious. *Id.* ¶ 23.

ImageRights yet again reached out on separate occasions on May 3, 2021, May 6, 2021, May 12, 2021, and May 26, 2021 to address Defendant's

14

infringement, and Nord continued to obfuscate, questioning the value of the Photos (a clear distraction from Defendant's blatant liability) and representing that Defendant's in-house counsel was still continuing to review the matter in what had become an implausibly drawn out "investigation." *Id.* ¶¶ 24-27. On June 3, 2021 (over two months after first apprising Defendants of the infringement), ImageRights again reached out, and Nord again suggested, without any basis, that Defendant had a valid right to use the Photos, despite receiving evidence months earlier that no copyright interest in the Photos ever transferred to Defendant. *Id.* ¶ 27.

To make matters worse, starting in January 2022, Plaintiff discovered Defendant was infringing the Second Infringing Set of ***27 additional Photos***. *Id.* ¶ 28. Despite being on clear notice that it had ***no license*** to use the images acquired in connection with the Atria acquisition, Defendant willfully stuck its head in the sand, continuing to exploit over two dozen additional of Plaintiff's copyright works, without once stopping to inquire whether it obtained the necessary rights, and without implementing any procedures at all to ensure that use of copyrighted images from sources in which their rights were, at best, questionable cease. *Id.* ¶¶ 14, 17-18. Defendant's failure to investigate and implement procedures for curtailing unlicensed use of images acquired by Atria, even after being notified repeatedly that the acquisition did not include licenses, directly lead to the infringement of 27 additional Photos, demonstrating further willfulness. *See, e.g., Nintendo of Am., Inc. v. Storman*, 2021 U.S. Dist. LEXIS 148119, at *14-15 (C.D. Cal. Aug. 5, 2021) (evidence of additional infringing copies after actual notice of the infringement constituted willfulness); *John Wiley & Sons, Inc. v. Book Dog Books, LLC*, 327 F. Supp. 3d 606, 627 (S.D.N.Y. Aug. 17, 2018) (finding that plaintiffs presented "ample evidence that Defendants recklessly disregarded or were willfully blind to infringement" where "[m]ere days after entering into the Settlement Agreement," defendant agreed to purchase books from known

counterfeiters, and despite settling prior copyright infringement claims, defendant delayed implementing formal anti-counterfeiting procedures for years.); *Reno-Tahoe Specialty*, 2014 U.S. Dist. LEXIS 177168, at *10, 23 (willfulness finding where defendant had previously infringed plaintiff's copyrighted images, but had taken no effort to license those images or do anything further to avoid using plaintiff's copyrighted images in the future).

Such failures to investigate or remediate further constitutes a stunning failure by a sophisticated corporation that creates and enforces its own intellectual property, regularly uses intellectual property, and readily accesses counsel. Shockingly, despite repeat notice of multiple infringements, ***a whopping year and a half later***, as of the filing date of the Complaint in this case (September 27, 2022), Defendant was still brazenly infringing several of Plaintiff's Photos, publicly displaying them in connection with the advertisement of Defendant's senior communities. SOF ¶ 30. As detailed and evidenced in the Complaint, Defendant still had not removed Photos depicting the Sterling Community from its online gallery, located at the URL https://www.pacificaseniorlivingsterling.com/senior-living/va/sterling/photo-gallery, and two of Hargis' Photos at the URL https://www.pacificaseniorliving.com/find-your-community#/locations?sortBy=state_then_city&state=CA&city=&searchRadius=20.—a total of at least five of the Photos. *Id.*

Such significant delay in and utter refusal to remediate known copyright claims constitutes paradigmatic willfulness. *See, e.g., Peer Int'l Corp. v. Pausa Records, Inc.*, 909 F.2d 1332, 1335-36 (9th Cir. 1990) (finding of willfulness where defendants received notice that they had no right to sell certain copyrighted works but continued to do so); *Warrington v. Taylor*, 2022 U.S. Dist. LEXIS 55312, at * 8-9 (C.D. Cal. March 9, 2022) (finding willful copyright infringement where "Plaintiff sent a cease and desist letter, served Defendant with a Summons

16

and Complaint, and briefly communicated with Defendant's counsel. Despite this knowledge, Defendant has yet to remove the infringing works from circulation."); *Hakkasan LV, LLC v. Adamczyk*, 2015 U.S. Dist. LEXIS 110307, at *28 (D. Nev. Aug. 19, 2015) (defendant's continued infringing activity "after he was informed of its infringing nature" presented "strong evidence of willful infringement"); *Sanrio, Inc. v. Torres*, 2015 U.S. Dist. LEXIS 189051, at *20 (C.D. Cal. Jan. 5, 2015) (willfulness finding where defendant continued to offer infringing product for sale after receiving a cease and desist letter); *Getty Images (US), Inc. v. Virtual Clinics*, 2014 U.S. Dist. LEXIS 37611, at *13 (W.D. Wa. Mar. 20, 2014) (finding of willfulness where Defendant continued to infringe plaintiff's photographs despite being repeatedly informed of its infringing conduct).

In the end, the case for willfulness could not be more clear. Without any care for copyright law, Defendant infringed the Photos without conducting any due diligence; it ignored Plaintiff's repeated entreaties that Defendant cease and desist its infringing conduct, even after being presented with indisputable proof that it had no license to make use of the works; and it did not bother to stop the infringement, even doubling down on it by infringing even more of Plaintiff's Photos after it had been put on notice about its unlawful conduct. The aforementioned timeline in which the Photos were knowingly infringed is not in dispute, and Defendant can point to nothing in the record to account for its obstinate, obtuse and obstructive responses to Plaintiff's infringement notices (other than its baseless "implied license" and "lack of knowledge" defenses). Even construing the evidence in a light most favorable to Defendant, the record is clear that Defendant acted knowingly and recklessly under established willfulness standards, both with respect to the First and Second Infringing Sets and in its actions in continuing to infringe the Photos after being notified of its infringement by Plaintiff's agents and right up to the day of the filing of this lawsuit. Accordingly, Plaintiff is entitled to a summary judgment finding that Defendant

**MEMORANDUM OF POINTS AND AUTHORITIES**

engaged in the infringement willfully.

## CONCLUSION

For the foregoing reasons, Plaintiff respectfully requests that the Court grant his Motion in its entirety.

Dated: May 26, 2023          **ONE LLP**


By: */s/ John Tehranian*

John Tehranian
Christopher S. Skinner

*Attorneys for Plaintiff,*
Scott Hargis d/b/a Scott Hargis Photo


## LOCAL RULE 11-6.2 CERTIFICATE OF COMPLIANCE

The undersigned, counsel of record for Plaintiff, certifies that this brief contains 5,963 words, which complies with the word limit of L.R. 11-6.1.


Dated: May 26, 2023          By: */s/ John Tehranian*
                                John Tehranian