UNITED STATES DISTRICT COURT

CENTRAL DISTRICT OF CALIFORNIA

SCOTT HARGIS d/b/a SCOTT HARGIS PHOTO, an individual,

Plaintiff,

v.

PACIFICA SENIOR LIVING MANAGEMENT LLC, a California limited liability company, and DOES 1 through 10,

Defendant.

Case No. 2:22-cv-06989-MCS-PD

**ORDER RE: PARTIES' CROSS-MOTIONS FOR SUMMARY JUDGMENT (ECF Nos. 30–31) AND DEFENSE COUNSEL'S MOTION TO WITHDRAW (ECF No. 40)**

Plaintiff Scott Hargis, doing business as Scott Hargis Photo, brought this suit alleging Defendant Pacifica Senior Living Management LLC willfully infringed his copyright in 43 photographs (the "disputed photographs"). (Compl., ECF No. 1.) Defendant moves for summary judgment that any infringement was not willful, that there are only seven works in dispute (as that term is used in the Copyright Act),[1] and

---

[1] As discussed in greater detail below, Defendant argues that photographs taken at each location constitute a single "work" as that term is used in the Copyright Act. Because

1

1  that Defendant had an implied license to use the photographs.  (Def.'s Mot, ECF No.
2  30-1.)  Plaintiff opposed the motion, (Pl.'s Opp'n to Def.'s Mot, ECF No. 36), and
3  Defendant replied, (Def.'s Reply, ECF No. 37).

4        Separately, Plaintiff moves for summary judgment that Defendant willfully
5  infringed his copyrights in the disputed photographs.  (Pl.'s Mot., ECF No. 31-1.)
6  Defendant filed an opposition, (Def.'s Opp'n to Pl.'s Mot., ECF No. 35), and Plaintiff
7  replied, (Pl.'s Reply, ECF No. 38).

8        Finally, Defendant's counsel Gordon & Rees Scully Mansukhani LLP
9  ("GRSM") moves to withdraw as counsel for Defendant.  (Withdrawal Mot., ECF No.
10  40-1.)  Plaintiff does not oppose this motion.  (*Id.* at 3.)

11        The Court deems these motions appropriate for decision without oral argument.
12  Fed. R. Civ. P. 78(b); C.D. Cal. R. 7-15.  The Court takes off calendar the hearing on
13  Defendant's counsel's motion to withdraw set for August 21, 2023.

14  **I.    EVIDENTIARY ISSUES**

15        Plaintiff objects to certain documents attached to the Brown declaration as
16  lacking proper authentication or foundation.  (Pl.'s Objections ¶¶ 5–12, ECF No. 36-8.)
17  The Court also notes that the documents are not presented in a manner compliant with
18  the Court's Initial Standing Order.  (*See* Initial Standing Order § 10(c)(ii), ECF No. 10
19  ("Documentary evidence as to which there is no stipulation regarding foundation must
20  be accompanied by the testimony, either by declaration or properly authenticated
21  deposition transcript, o[f] a witness who can establish authenticity.").)

22  _____

23  one of the properties at issue was at various times referred to as "Menifee" and "Sun
24  City," "there was confusion on Pacifica's side as to whether the 'Menifee' and 'Sun
25  City' properties were the same or different, as Pacifica's Menifee property is located in
   Sun City."  (Def.'s Reply 2 n.1, ECF No. 37.)  Although Defendant's motion argues the
26  number of "works" is eight, Defendant's reply brief clarified that there are only "seven
27  properties that used the Photos" and thus "seven, not eight, is the proper number of
   works."  (*Id.*)  Accordingly, the Court evaluates Defendant's motion as if it claims the
28  number of works is seven and not eight.

1    Given the *extreme* sanctions that would be imposed if these documents were false
2    or submitted with the knowledge they were inadmissible evidence, the Court believes
3    judicial economy is best served by considering the proffered evidence as if it were
4    admissible.  This does not, however, excuse Defendant from its obligation to properly
5    authenticate and establish a foundation for documents offered in support of its motion.
6    ***Accordingly, Defendant shall submit substantiating declarations within seven days of***
7    ***the date of this Order***.  ***Failure to comply with this order will result in the imposition***
8    ***of financial and/or terminating sanctions.***

9    The Court concludes that it need not resolve many of Plaintiff's remaining
10   objections at this time.  To the extent the Court relies on the objected-to evidence not
11   discussed above, the relevant objections are OVERRULED.  *See Burch v. Regents of*
12   *Univ. of Cal.*, 433 F. Supp. 2d 1110, 1119 (E.D. Cal. 2006).

13   **II.    BACKGROUND**

14   "Plaintiff is an interior and architectural photographer."  (Pl.'s Statement of
15   Genuine Disputes ("PSGD") ¶ 1, ECF No. 36-6.)  Atria Management Co. ("Atria")
16   hired Plaintiff to take photographs of seven "Atria senior living facilities" located in
17   "Burlingame, Fresno, Sun City, . . . Sterling, Rancho Penasquitos, Encinitas, and Chula
18   Vista" (the "Atria properties").  (*Id.* ¶ 5.)  Atria displayed the 43 disputed
19   "[p]hotographs on its websites for marketing of properties in order to entice customers
20   to view, visit, and potentially become residents," (*Id.* ¶ 9; *see id.* ¶ 2), pursuant to "non-
21   exclusive license[s] to Atria Senior Living[] and HCP Inc." which were "not
22   transferable" and for which "[t]hird-party usage . . . [was] not granted," (Hargis Decl.
23   Ex. C ("Atria Invoices"), ECF No. 31-11).  "The Photos are subject to two [copyright]
24   registrations, VA 2-140-916 and VA 2-174-022," both of which are held by Plaintiff.
25   (PSGD ¶ 3; Naylor Decl. Ex. A ("Registration Statements"), ECF No. 31-13.)

26   "Throughout 2020 and 2021, Pacifica bought [the] seven senior living facilities"
27   depicted in the disputed photographs "from Atria or Atria-related entities."  (PSGD
28   ¶¶ 14–15.)  Following its acquisition of the Atria properties, Defendant displayed the

disputed photographs "on its websites for the seven facilities," (*id.* ¶ 22), which "were designed by third party company G5," (*id.* ¶ 18).

On March 30, 2021, Joseph Naylor emailed Defendant on behalf of ImageRights International ("ImageRights"), which is "a copyright and licensing agent to professional photographers, photo agencies, media companies and publishers who discover unlicensed uses of their works." (Naylor Decl. Ex. C ("ImageRights email"), ECF No. 31-15.)   The ImageRights email claimed that "Scott Hargis's copyrighted images . . . were discovered on the website www.pacificamenifee.com" and that ImageRights possessed "no record of a license." (*Id.*)  The email identified 16 images by their "Image IDs" (e.g., "hargis_180613_7290"). *Id.*  The same day the email was sent, "Pacifica's marketing director Lucie Punches forwarded the Image Rights [sic] email to Collin Foote, who works for Pacifica's web designer G5." (PSGD ¶ 28.)  A series of email exchanges between G5 and Defendant's legal counsel followed as Defendant attempted to discern whether Mr. Naylor's email was legitimate or "spam." (*Id.* ¶¶ 28–31.)  "On April 12, 2021, Ms. Punches requested G5 remove the images from the websites." (*Id.* ¶ 32.)  On April 19, 2021, Brian Nord, Defendant's insurance and claims adjuster, again directed Ms. Punches to "remove the images" and not use "them in any additional media." (*Id.* ¶ 36.)  On April 26, 2021, Ms. Bringman, an ImageRights representative, confirmed that it appeared the 16 images had been removed from the website but noted that "they [were] still on the server for the website." (*Id.* ¶ 39 (internal quotation marks omitted).)   On May 3, 2021, Ms. Bringman acknowledged that Defendant "'acted promptly' to remove the images from [its] website." (*Id.* ¶ 43 (citing Brown Decl. Ex. 4, at SHP000205, ECF No. 30-7).)

Plaintiff filed the instant suit on September 27, 2022, contending that Defendant infringed his copyright in all 43 of the disputed photographs.  (Compl. ¶¶ 10, 13, 15.) Defendant moves "for summary judgment or partial summary judgment on the following grounds: (1) Pacifica did not engage in 'willful' infringement; (2) that the number of copyrighted 'works' is [seven]; and/or (3) that Pacifica permissibly used the

1  photos under an implied license." (Notice of Def.'s Mot., ECF No. 30.)  Plaintiff cross-

2  moves for summary judgment on the basis that Defendant is liable for willful copyright

3  infringement. (Pl.'s Mot. 2.)

4  **III.    LEGAL STANDARD FOR SUMMARY JUDGMENT MOTIONS**

5       Summary judgment is appropriate where there is no genuine issue of material

6  fact and the moving party is entitled to judgment as a matter of law. Fed. R. Civ. P.

7  56(a); *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986).  A fact is material when,

8  under the governing law, the resolution of that fact might affect the outcome of the case.

9  *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986).  A dispute is genuine "if the

10 evidence is such that a reasonable jury could return a verdict for the nonmoving party."

11 *Id.*  The burden of establishing the absence of a genuine issue of material fact lies with

12 the moving party, *see Celotex*, 477 U.S. at 322–23, and the court must view the facts

13 and draw reasonable inferences in the light most favorable to the nonmoving party, *Scott*

14 *v. Harris*, 550 U.S. 372, 378 (2007).  To meet its burden,

15              [t]he moving party may produce evidence negating an

16              essential element of the nonmoving party's case, or, after

17              suitable discovery, the moving party may show that the

18              nonmoving party does not have enough evidence of an

19              essential element of its claim or defense to carry its ultimate

20              burden of persuasion at trial.

21 *Nissan Fire & Marine Ins. Co., Ltd. v. Fritz Cos., Inc.*, 210 F.3d 1099, 1106 (9th Cir.

22 2000).  Once the moving party satisfies its burden, the nonmoving party cannot simply

23 rest on the pleadings or argue that any disagreement or "metaphysical doubt" about a

24 material issue of fact precludes summary judgment. *Matsushita Elec. Indus. Co., Ltd.*

25 *v. Zenith Radio Corp.*, 475 U.S. 574, 586 (1986).  There is no genuine issue for trial

26 where the record taken as a whole could not lead a rational trier of fact to find for the

27 nonmoving party. *Id.* at 587.

28       "[W]hen parties submit cross-motions for summary judgment, each motion must

be considered on its own merits." *Fair Hous. Council of Riverside Cnty., Inc. v. Riverside Two*, 249 F.3d 1132, 1136 (9th Cir. 2001) (internal quotation marks omitted). "In fulfilling its duty to review each cross-motion separately, the court must review the evidence submitted in support of each cross-motion." *Id.* Accordingly, while both parties' motions are considered in this Order, the Court analyzes each one independently.

## IV.    DEFENDANT'S MOTION FOR SUMMARY JUDGMENT

### A.    Willful Infringement

"To prove 'willfulness' under the Copyright Act, the plaintiff must show (1) that the defendant was actually aware of the infringing activity, or (2) that the defendant's actions were the result of 'reckless disregard' for, or 'willful blindness' to, the copyright holder's rights." *Louis Vuitton Malletier, S.A. v. Akanoc Sols., Inc.*, 658 F.3d 936, 944 (9th Cir. 2011) (quoting *Island Software & Computer Serv., Inc. v. Microsoft Corp.*, 413 F.3d 257, 263 (2d Cir. 2005)). "A willfully blind defendant is one who takes deliberate actions to avoid confirming a high probability of wrongdoing and who can almost be said to have actually known the critical facts. By contrast, a reckless defendant is one who merely knows of a substantial and unjustified risk of such wrongdoing." *Erickson Prods., Inc. v. Kast*, 921 F.3d 822, 833 (9th Cir. 2019) (cleaned up). A showing that the defendant was negligent, i.e., that the defendant "should have known of a similar risk but, in fact, did not," cannot support a finding of willful infringement. *Id.* at 833–34.

"Generally, a determination as to willfulness requires an assessment of a party's state of mind, a factual issue that is not usually susceptible to summary judgment." *UMG Recordings, Inc. v. Disco Azteca Distribs., Inc.*, 446 F. Supp. 2d 1164, 1174 (E.D. Cal. 2006) (internal quotation marks omitted). "However, where the relevant facts are admitted or otherwise undisputed, willfulness can be appropriately resolved on summary judgment." *Id.* (citing *Peer Int'l Corp. v. Pausa Recs., Inc.*, 909 F.2d 1332, 1335–36 (9th Cir. 1990), and *Sega Enters. Ltd. v. MAPHIA*, 948 F. Supp. 923, 936

6

(N.D. Cal. 1996)).  "Willfulness need not be proven directly but may be inferred from the defendant's conduct." *Id*. at 1173.

"To refute evidence of willful infringement, [the defendant] must not only establish its good faith belief in the innocence of its conduct, it must also show that it was reasonable in holding such a belief." *Peer Int'l*, 909 F.2d at 1336.  Thus, to succeed on its motion, Defendant must present sufficient facts proving it reasonably believed it had a right to display the disputed photographs.

Defendant offers two arguments in support of its contention that any infringement was not "willful."  First, Defendant argues it "was operating under a reasonable belief that it was using the Hargis images lawfully via its purchase from Atria, and that all photographs on the websites designed by G5 were licensed." (Def.'s Mot. 11.)  Second, Defendant claims the fact that it "'acted promptly' to remove the images from [its] website once notified of them" shows that any infringement was not willful.  (*Id.* at 12.)  As explained in greater detail below, Defendant is entitled to a determination that any infringement of the 16 photographs identified in the ImageRights email was not willful.  Defendant is *not* entitled to summary judgment concerning the willfulness of any infringement of the remaining disputed photographs.

> 1.    *Prior to the ImageRights Email, Defendant Reasonably Believed It Had a Right to Use the Disputed Photographs*

Defendant proffers two justifications for its claim that it reasonably believed it had a right to use the disputed images, only one of which is supported by sufficient evidence.  First, Defendant claims that "Pacifica and G5's policy was to use only licensed images on the Pacifica websites."  (PSGD ¶ 20.)  Defendant's evidence in support of this claim is limited to the declaration of Heather Smith.  (*See id.* (citing Smith Decl. ¶ 6, ECF No. 30-8).)  Defendant produces no evidence of a written policy or any other document (e.g., employee handbooks, internal emails, etc.) suggesting it was company policy to use licensed images on its website.  Further, given Plaintiff's photographs appeared on Defendant's website without an express license, there is

reason to question whether the policy (assuming it existed) was ever followed in practice.  A policy is only as good as the paper it is written on if it is never followed or disregarded at will.

Plaintiff has the ultimate burden of showing Defendant willfully infringed his copyrights.  *UMG Recordings, Inc.*, 446 F. Supp. 2d at 1173.  Thus, to succeed in its summary judgment motion that infringement was not willful, Defendant must "produce evidence negating an essential element of [Plaintiff's] case, or" showing that Plaintiff "does not have enough evidence of an essential element of its claim . . . to carry its ultimate burden of persuasion at trial." *Fritz Cos., Inc.*, 210 F.3d at 1106.  Specifically, Defendant must produce evidence showing Plaintiff could not possibly show Defendant had a reasonable and good faith belief that its use of the disputed photographs was authorized.  Defendant has not presented sufficient evidence that it maintained and regularly abided by a policy of exclusively using licensed images on its website, thereby giving rise to a reasonable belief that all images on its websites were authorized.  Thus, its motion for summary judgment cannot be granted on that basis.[2]

Defendant's second argument is that "[i]n all prior acquisitions of properties from any third party, Pacifica has always received from that party photos (including attendant rights, licenses, and/or permissions to use the photos) of the property to use on the community website, as contemplated and intended as part of the acquisition transaction." (PSGD ¶ 17.)  Based on this, Defendant argues it "reasonably believed that it had permission to use the photographs, as doing so was industry standard to use a seller's marketing material following the purchase of a property, and because Pacifica had come into possession of the photographs, apparently via Atria." (Def.'s Mot. 12

---

[2] Plaintiff also objects to this evidence on the grounds that Defendant never identified G5 as an entity likely to have discoverable information and failed to mention any policy or contract in its initial disclosures.  (Pl.'s Objections ¶¶ 3–4.)  This constitutes an independent basis to exclude consideration of any "policy" that G5 may have had with respect to the use of licensed images.  Fed. R. Civ. P. 37(c).

1  (citing PSGD ¶ 16).)

2      To support these assertions, Defendant cites its response to Plaintiff's

3  interrogatory requesting Defendant "[d]escribe in detail all efforts [it] made to secure

4  any licenses or rights for content such as photographs used on the Pacifica Websites."

5  (Brown Decl. Ex. 1, at 7, ECF No. 30-4.)  While interrogatory responses alone may be

6  insufficient to establish a fact for the purposes of summary judgment, *see Carter v.*

7  *Clark County*, 459 F. App'x 635, 636 (9th Cir. 2011), Defendant's internal emails also

8  show that at the time it received the ImageRights email, Defendant believed it had a

9  right to display photographs of the properties it had purchased from Atria.  Mr. Nord

10  wrote, "The photographer that [ImageRights] represent[s] lists Atria as one of their

11  clients on their website.  When we purchase these facilities it should include these

12  photos.  We purchased both of these facilities from Atria.  So we should be able to get

13  this sorted out."  (PSGD ¶ 31 (quoting Brown Decl. Ex. 2, at PACIFICA000078, ECF

14  No. 30-5).)

15      Taken together, the interrogatory response and the contemporaneous email show

16  that Defendant believed the purchase the Atria properties included "photos (including

17  attendant rights, licenses, and/or permissions to use the photos) of the property to use

18  on the community website." (PSGD ¶ 17.)  Defendant has therefore provided sufficient

19  evidence demonstrating that before it received the ImageRights email, Defendant

20  honestly and "reasonably believed that it had permission to use the photographs."

21  (Def.'s Mot. 12.)

22      Plaintiff's evidence and arguments in opposition do not raise a genuine dispute.

23  First, Plaintiff argues that "Defendant relies solely on its own lawyer-drafted

24  interrogatory responses and nothing else."  (Pl.'s Opp'n to Def.'s Mot. 2 (emphasis

25  removed).)  As discussed above, Defendant's evidence is not limited to its interrogatory

26  response.  Contemporaneous emails from Defendant's employees show that Defendant

27  honestly (if erroneously) believed that the right to use the disputed images was included

28  in the purchase from Atria.  (*See* Brown Decl. Ex. 2, at PACIFICA000078.)

Plaintiff next points out that the express licenses under which Atria was authorized to use the disputed photographs were "not transferable," and expressly precluded "third-party usage." (Pl.'s Opp'n to Def.'s Mot. 4; *see* Atria Invoices.) From this, Plaintiff claims that "Defendant's complete failure to investigate in the face of such express license language and clear law demonstrates willfulness." (Pl.'s Opp'n to Def.'s Mot. 4.) Plaintiff offers no evidence showing Defendant was actually aware of the terms of the Atria Licenses before it received the ImageRights email. (*See* PSGD ¶ 35 (leaving undisputed that ImageRights first provided Atria Invoices to Defendant on April 19, 2021).) Nor does the record show that Defendant had any reason to suspect the Atria properties were "unique" in that their purchase did not include a right to display their photographs on the community website. Thus, Plaintiff's argument amounts to a claim that Defendant should have been aware of the risk that it was infringing Plaintiff's copyright, but was not. This would constitute negligent infringement and is insufficient to sustain a finding of willfulness. *Kast*, 921 F.3d at 833–34.

Finally, Plaintiff argues that Defendant's contention "conflicts with black letter law explaining that copyright licenses are not assignable 'absent express language to the contrary.'" (PSGD ¶ 17 (quoting *Cincom Sys. v. Novelis Corp.*, 581 F.3d 431, 437 (6th Cir. 2009)).) The fact that Defendant was either ignorant of the law or adopted an erroneous understanding about its right to use the disputed photographs may lead to a finding that its conduct was not willful.[3] Mistakes of law may be used as evidence of a defendant's lack of knowledge. *See Unicolors, Inc. v. H&M Hennes & Mauritz, L. P.*, 142 S. Ct. 941, 947 (2022) (interpreting multiple provisions of the Copyright Act to

---

[3] It is possible that Defendant obtained the "attendant rights, licenses, and/or permissions to use the photos" of properties it purchased because the licenses to display photographs of those properties generally authorize subsequent purchasers to continue to use the photographs. (PSGD ¶ 17.) Viewing the evidence in the light most favorable to Plaintiff, however, the Court assumes this is not the case.

conclude "the word 'knowledge' means actual, subjective awareness of both the facts *and the law*." (emphasis added).)  Nor does it matter that Defendant was mistaken about the law despite being a "sophisticated company . . . who has access to counsel and is" in the business of "entering into complex acquisitions."  (Pl.'s Opp'n to Def.'s Mot. 7.) For one thing, this argument is based on a negligence standard which, as discussed above, is irrelevant to the willful infringement analysis.  For another, the Ninth Circuit rejected a similar argument in *VHT, Inc. v. Zillow Group, Inc.*, 918 F.3d 723, 749 (9th Cir. 2019) ("VHT's argument that Zillow, a sophisticated business with a robust legal team, should have known that its feed provider license agreements were invalid is unavailing.").

Defendant has presented evidence that when purchasing properties, it "always received from [the seller] photos (including attendant rights, licenses, and/or permissions to use the photos)" of the property.  (PSGD ¶ 17.)  Even if Defendant was mistaken about its rights to use photographs following these purchases, a mistake of law does not support a showing of willful infringement, and Plaintiff offers no evidence that Defendant had actual knowledge of its mistaken interpretation.  Thus, a reasonable trier of fact could only conclude that before receiving the ImageRights email Defendant had no reason to know or believe that using Atria's "marketing material following the purchase of a property" may have violated Plaintiff's copyrights.  (Def.'s Mot. 12.)

        2.   *Defendant's Prompt Takedown of the Photos Identified in the ImageRights Email Demonstrates a Lack of Willful Infringement*

Defendant argues that its prompt takedown of Plaintiff's photos shows a lack of willfulness.  (Def.'s Mot. 12–15.)  The Ninth Circuit has recognized that "[i]ntellectual property rights are often disputed," and "[t]o hold that willfulness must be inferred whenever an alleged infringer uses an intellectual property in the face of disputed title would turn every copyright claim into willful infringement and would improperly discourage many legitimate, good faith transactions."  *Danjaq LLC v. Sony Corp.*, 263 F.3d 942, 959 (9th Cir. 2001).  As a result, a defendant in a copyright action is entitled

11

1  to a reasonable period of time to investigate the legitimacy of infringement claims

2  before an inference of willfulness arises.

3      At the same time, the speed with which a defendant complies with a notice of

4  infringement does not always indicate innocuous conduct. On the one hand, a quick

5  takedown of infringing works could serve as evidence that a defendant was honestly

6  unaware it was infringing upon a copyrighted work and that it wanted to correct its good

7  faith error as expeditiously as possible. On the other hand, prompt remediation might

8  show that a defendant was attempting to get away with infringing activities, and only

9  acted quickly to mitigate further liability once its intentional, tortious conduct had been

10  exposed. Consequently, remedial action is probative of a defendant's lack of willful

11  infringement when it shows a defendant was surprised to learn that it had been

12  infringing the plaintiff's copyright and undertook a good faith effort to resolve the issue

13  in a reasonable time. *See New Line Cinema Corp. v. Russ Berrie & Co.*, 161 F. Supp.

14  2d 293, 300–01 (S.D.N.Y. 2001) (concluding infringement was not willful in part

15  because defendant promptly responded to plaintiff's cease-and-desist letter by asking

16  for more details).

17      Defendant produces evidence showing that, upon receiving the ImageRights

18  email, it immediately began investigating the veracity of the claims. The same day

19  Defendant received the ImageRights email, "Pacifica's marketing director Lucie

20  Punches forwarded the Image Rights [sic] email to Collin Foote, who works for

21  Pacifica's web designer G5, as Ms. Punches was unsure whether the email was spam or

22  if there were any issues with the website that G5 had designed." (PSGD ¶ 28.) After

23  Mr. Foote "recommended Pacifica's counsel take a look," (*id.* ¶ 29), "Ms. Punches

24  forwarded the email to Pacifica's in-house counsel," who then "forwarded it to Brian

25  Nord," (*id.* ¶ 30). "Mr. Nord looked into Image Rights [sic] and confirmed it was a

26  legitimate company, and recommended that Pacifica show its license or wait for more

27  official correspondence." (*Id.*) Following further internal discussions, (*id.* ¶ 31), "Ms.

28  Punches requested G5 remove the images from the websites" on April 12, 2021, (*id.*

¶ 32).  This was followed by another email from Mr. Nord on April 19, 2021, directing G5 to remove the images and refrain from using them in any additional media.  (*Id.* ¶ 36.)  This entire process took just over three weeks.

A week later, on April 26, 2021, "Mr. Nord emailed Ms. Bringman," stating, "I am told that the images have been removed now that we have notice of this matter.  If that is not correct let me know and I will follow up with our marketing team."  (*Id.* ¶ 38 (internal quotation marks omitted).)  The same day, Ms. Bringman acknowledged that it appeared the photographs were not displayed on the website but pointed out that the 16 photos were "still on the server for the website," (*id.* ¶ 39 (internal quotation marks omitted)), and followed up the next week on May 3, 2021, to again recommend that the photos be removed from the server if Defendant had access, (*id.* ¶ 40).  The same day as Ms. Bringman's follow up email, "Mr. Nord confirmed that he had requested the photos be removed from the server but was unsure if Pacifica had control of that server."  (*Id.* ¶ 41.)  The following week, Mr. Nord sent an email to Ms. Bringman stating that the "images should have all been removed," to which Mr. Bringman replied, "I have reviewed the Pacifica site and it appears the images have been removed."  (Brown Decl. Ex. 4, at SHP000247.)

Defendant's response to the ImageRights email leaves no doubt that it was genuinely surprised to be told it was infringing on Plaintiff's copyright.  Defendant's employees initially expressed skepticism that it was infringing any copyright, (PSGD ¶¶ 28–29, 31), and began taking steps to investigate the veracity of ImageRights' claim, (*id.* ¶¶ 28–31, 33).  The investigation was conducted quickly and resulted in the removal of the photographs identified in the ImageRights email in a matter of weeks.  Nothing in the record suggests that the investigation was made in bad faith or as a dilatory tactic to allow Defendant to continue displaying the disputed photographs.  Given Ms. Bringman from ImageRights expressed "appreciat[ion]" for the fact that Defendant "acted promptly to remove the image[s]," (Brown Decl. Ex. 4, at SHP000246), no reasonable finder of fact could conclude that Defendant's conduct was anything other

than a good faith effort to correct an honest mistake.

Defendant is therefore entitled to a determination that any infringement of the 16 disputed photographs identified in ImageRights' email was not willful.

### 3. *Defendant Is Not Entitled to Summary Judgment as to the Remaining Disputed Photographs*

Although Defendant promptly removed the 16 disputed photographs identified in the ImageRights email from its website, the record is considerably less developed with respect to the remaining 27 disputed photographs. Defendant contends it "searched its websites and took down 22 Photos not identified by Plaintiff." (Def.'s Reply 5 (emphasis removed).) This contention is not supported by any citation of the record, and does not specify a date—or even an approximate timeframe—when these 22 disputed photographs were removed. Further, the 27 disputed photographs were on Defendant's websites as of January 2022, more than nine months after the ImageRights email, (Defendant's Statement of Genuine Disputes ("DSGD") ¶ 28, ECF No. 35-5), and Defendant acknowledges that at least five of Plaintiff's photographs remained on its website when the lawsuit was filed in September 2022. (*See* Def.'s Reply 5 (acknowledging that "the number of Photos on the websites had been whittled down to five" by the time Plaintiff filed suit (internal quotation marks omitted))).

Defendant is not entitled to summary judgment on the issue of willfulness with respect to these photographs because willfulness may be found where the defendant's "actions were the result of reckless disregard for, or willful blindness to, the copyright holder's rights." *Akanoc Sols., Inc.*, 658 F.3d at 944 (internal quotation marks omitted). Plaintiff argues "that Defendant received actual notice by April 19, 2021 at the latest that Atria had no authority to transfer the licenses to Plaintiff's Photos to Defendant." (Pl.'s Opp'n to Def.'s Mot. 7 (emphasis removed).) The April 19, 2021 email from Ms. Bringman only identifies the websites of two facilities on which Defendant displayed the disputed photographs. (*See* Bringman Decl. Ex. A, at SHP000164, ECF No. 31-18.) Whether the proffered licensing agreement (which is not included in any of the

exhibits to Ms. Bringman's declaration) was sufficient to show Defendant had the requisite knowledge to find willful infringement of the other disputed photographs is therefore a question for the finder of fact. Additionally, the facts show that Defendant did not remove the other disputed photographs from websites for *at least* nine months. (DSGD ¶ 28.) A reasonable trier of fact could conclude from this long delay that Defendant's infringement of the 27 remaining disputed photographs was willful.

There is a genuine issue as to whether Defendant knew or had reason to suspect it was using the remaining disputed photographs without proper permission during this period. As a result, the Court cannot determine as a matter of law that Defendant did not willfully infringe the 27 disputed photographs not identified in the ImageRights email.

### B. Number of Works at Issue

Defendant argues that it is entitled to a determination that the 43 disputed photographs constitute no more than seven "works," as that term is used in the Copyright Act. (Def.'s Mot. 15–20.) The Copyright Act allows a plaintiff the option of recovering "an award of statutory damages for all infringements involved in the action, with respect to any one *work*, for which any one infringer is liable individually." 17 U.S.C. § 504(c)(1) (emphasis added). Although the Copyright Act does not specifically define the term "work," it states that "all the parts of a *compilation* or *derivative work* constitute one work." *Id.* (emphasis added). In considering what constitutes a "work" under the Copyright Act, "every circuit to address the issue has held that separate copyrights are not distinct works unless they can live their own copyright life." *Columbia Pictures Indus., Inc. v. Krypton Broad. of Birmingham, Inc.*, 259 F.3d 1186, 1193 (9th Cir. 2001) (internal quotation marks omitted). As a result, Defendant must show Plaintiff cannot carry his burden of demonstrating that each disputed photograph "has an independent economic value and is, in itself, viable." *Id.* (internal quotation marks omitted). What constitutes a "work" is a question of law when "there are no underlying factual disputes for the jury to resolve." *Id.*

Defendant has not presented sufficient evidence from which the Court may conclude as a matter of law that there are only seven works at issue in this case. Defendant argues that "[a]ll 43 Photographs listed in the Complaint are registered in one 'group'" and that the Court should therefore conclude there are seven "'works' because the 43 Photographs were taken in groups in [seven] properties." (Def.'s Mot. 15.) As an initial matter, the Court notes that Plaintiff did not register his work as a series of "compilation[s]," 17 U.S.C. § 504(c)(1), but rather as a "Group of Published Photographs." (Registration Statements.) To the extent the registration label is relevant, it cuts against Defendant's argument because it suggests the disputed photographs are not part of a "compilation." 17 U.S.C. § 504(c)(1); *see Zillow*, 918 F.3d at 748 ("Though the registration label is not controlling, it may be considered by the court when assessing whether a work is a compilation.").

Next, Defendant unpersuasively argues that the holding in *Coogan v. Avnet, Inc.*, No. CV040621PHXSRB, 2005 WL 2789311 (D. Ariz. Oct. 24, 2005), shows the disputed photographs should be evaluated as seven "works." (Def.'s Mot. 15–18.) The plaintiff in *Coogan* was a photographer hired to take photographs of a company's CEO. *Id.* at *1. The plaintiff brought suit after the defendant used three of the photographs without the plaintiff's permission. *Id.* at *2. The plaintiff moved for summary judgment, claiming that the three photographs were individual "works," but the court disagreed and concluded the case involved only one. *Id.* at *6. The court noted the three "photographs were the subject of a single license agreement," and "involved a single subject, a single photographer and a single location." *Id.* The Court also recognized "there [was] no evidence in the record that Plaintiff marketed the images to the public separately" because "the photographs were taken at a single session, by a single photographer, for a single purpose." *Id.*

The instant case is readily distinguishable from *Coogan*. While the disputed photographs of the seven properties were subject to seven license agreements (one license agreement for each property), (*see* Atria Licenses), the photographs of each

property did not concern a "single subject" at a "single location." *Coogan*, 2005 WL 2789311, at *6. The disputed photographs depict *multiple* subjects (*e.g.*, the pool, hair salon, dining room, etc.) and were thus taken at *multiple* locations at each property. Even to an individual without a background in photography, it is clear that the creative considerations involved in each individual photograph—e.g., composition, lighting, depth of field, contrast, shutter speed, etc.—would necessarily have been different at each location within each property. Additionally, Plaintiff had to physically pick up and move his camera to capture each feature of the individual property. Far from being a series of snapshots of the same subject, each photograph is a unique creative expression.

Further, unlike in *Coogan*, there is evidence that the images had independent economic value. Defendant contends that "[e]ach individual photo had no value to Atria, Pacifica, or anyone else." (Def.'s Mot. 19.) This argument strains common sense considering Atria and Defendant wanted to display the photographs "to entice customers to view, visit, and potentially become residents" of its properties and "[t]he only intended use of the Photographs was for Atria to market the properties." (PSGD ¶¶ 9–10.) Reasonable consumers may discount written descriptions in real estate advertising as exaggerations or puffery. Prospective customers are thus more likely to become future tenants if they can see for themselves that the pool is well maintained or the dining room is sun-soaked and airy. It is difficult to believe that photographs of a property's pool, dining room, or hair salon would not each have independent value since they would make an advertisement highlighting these features even more effective. In essence, each disputed photograph is the practical manifestation of the adage that "a picture is worth a thousand words," and Plaintiff's claim that "the invoices to Atria were ultimately assessed and valued on a per-image basis" is entirely reasonable. (Pl.'s Opp'n to Def.'s Mot. 11 (citing Hargis Decl. ¶ 7, ECF No. 36-1).) *Cf. Coogan*, 2005 WL 2789311, at *6 (finding "no evidence in the record that Plaintiff marketed the images to the public separately").

17

To the extent this case involves photographs "taken at a single session, by a single photographer, for a single purpose," *Coogan*, 2005 WL 2789311, at *6, the Court respectfully declines to conclude that the photographs taken at each facility together constitute a solitary work. Plaintiff initially granted Atria a license to use 61 photographs, but there are only 43 disputed photographs at issue in this case. (Pl.'s Opp'n to Def.'s Mot. 12; *see also* Atria Invoices.) The fact that Atria did not display all of the photographs supports Plaintiff's contention that the "Photos could be exploited on a piecemeal and individual basis and licensed in any number of ways apart from the licensing arrangement agreed upon between Plaintiff and Atria." (Pl.'s Opp'n to Def.'s Mot. 12.)

Because there is a triable issue as to whether the photographs of each property were "part[] of a compilation" or that they otherwise "constitute one work," 17 U.S.C. § 504(c)(1), Defendant's motion for summary judgment on this issue is DENIED.

### C.    Implied License

Defendant argues that it possessed an implied license to use the disputed photographs. (Def.'s Mot. 20.) Defendant's argument is plainly without merit considering the terms of the Atria Licenses expressly state they were "not transferrable" and prohibited "[t]hird party usage." (Atria Licenses) It should hardly be worth noting that "no implied license may permit what a written license prohibits." *Taylor Holland LLC v. MVMT Watches, Inc.*, No. 2:15–cv–03578–SVW–JC, 2016 WL 6892097, at *6 (C.D. Cal. Aug. 11, 2016). Stated differently, "[a] sign stating 'DO NOT ENTER' simply cannot be construed as an implied right to enter." (Pl.'s Opp'n to Def.'s Mot. 19.) Even Defendant "acknowledges that the invoices did not grant the right to Atria to sublicense, and do not mention any rights to subsequent buyers of the property." (Def.'s Mot. 21.) Because the express licenses prevented anyone but Atria from using the disputed photographs without Plaintiff's consent, Defendant's motion fails.

It is also irrelevant whether Defendant was ignorant of the licenses' terms or initially believed the licenses allowed Atria to sub-license the disputed photographs. A

18

determination as to whether there is an implied license turns on "the *licensor's objective intent* at the time of the creation and delivery of the" work, not the understanding of the putative *licensee*. *Asset Mktg. Sys., Inc. v. Gagnon*, 542 F.3d 748, 756 (9th Cir. 2008) (emphasis added). Plaintiff clearly intended to limit the license to Atria and to Atria alone. Whether Defendant reasonably believed it obtained a license from Atria may be relevant to the question of willfulness, but it has no bearing on whether there is an implied license in this case. *See Bell v. Wilmott Storage Servs., LLC*, 12 F.4th 1065, 1081 (9th Cir. 2021) ("[C]opyright infringement is a strict liability tort.").

Even if the express licenses did not obviously foreclose Defendant's argument—they do—there still would be no basis to conclude Defendant had an implied license to use the disputed photographs. To determine whether a defendant has an implied license to use a copyrighted work, courts in the Ninth Circuit use the test first recognized in *Effects Associates, Inc. v. Cohen*, 908 F.2d 555, 558 (9th Cir.1990). Under the *Effects Associates* test, "an implied license is granted when (1) a person (the licensee) requests the creation of a work, (2) the creator (the licensor) makes that particular work and delivers it to the licensee who requested it, and (3) the licensor intends that the licensee-requestor copy and distribute his work." *Gagnon*, 542 F.3d at 754–55 (cleaned up). None of these elements are satisfied here. Defendant did not request the creation of the work, Plaintiff did not deliver the works to Defendant, and there is no evidence suggesting Plaintiff intended that Defendant copy or distribute his work.

Relying on *Oliver v. Meow Wolf, Inc.*, No. 20-237 KK/SCY, 2022 WL 4132706, at *19 (D.N.M. Sept. 12, 2022), Defendant urges the Court to adopt a strained reading of the *Effects Associates* test and conclude that Atria's "license vested in Pacifica upon" the "purchase" of the properties. (Def.'s Mot. 21–22.) The plaintiff in *Oliver* was an artist who had been asked to create a sculpture for "a permanent exhibition in Santa Fe, New Mexico." *Oliver*, 2022 WL 4132706, at *2. Although the defendant had merged with one of the entities that was managing the exhibition when the sculpture was first installed, the defendant had not originally commissioned the work, and plaintiff brought

suit claiming the defendant was therefore violating her copyright in the sculpture. *Id.* at *13.

Recognizing that "[t]he touchstone for finding an implied license, according to the *Effects Associates* framework, is intent," the court concluded that the plaintiff intended for the implied license to vest in the installation's "operators for the first ten years of the exhibit's operation," whoever those operators may be. *Id.* at *17–18 (cleaned up). The court noted that the plaintiff had been asked to construct an art installation that was "going to be up for 10 years," *id*. at *12 (internal quotation marks omitted), and that she did not object to the defendant's display of her copyrighted work until many years after the defendant had merged with the entity that had been running the exhibition, *id.* at *18. Perhaps most importantly, the court recognized the case involved "the initial grant of an implied license to two licensees and the subsequent merger of one of these licensees into a survivor, with the predecessor's rights vesting in the survivor by operation of law." *Id.* at *19 (citing N.M. Stat. Ann. § 53-19-62.2(A)(2), (3), (5) (New Mexico law regarding the effect of conversions and mergers)).

The facts of this case are readily distinguishable from *Oliver*. First, "*Oliver* did not involve an express license agreement that stated in no uncertain terms that the license could not be transferred." (Pl.'s Opp'n to Def.'s Mot. 19.) Second, even accepting Defendant's contention that "Plaintiff licensed the Photographs to Atria with the knowledge and understanding that Atria would display the Photographs on its websites for marketing" purposes, (Def.'s Mot. 22 (citing PSGD ¶ 9),[4] the strict limitations of the licensing agreements belie any conclusion that Plaintiff intended that the license extend to any entity other than Atria, (*see* Atria Invoices ("License is not

---

[4] The Court is dubious that the cited paragraph supports the inference that Plaintiff knew the photographs would be used for a specific purpose. The paragraph does not discuss what Plaintiff knew, (PSGD ¶ 9), and in the very next paragraph, Plaintiff disputes that "[t]he only intended use of the Photographs was for Atria to market the properties," (*id.* ¶ 10).

transferrable.  Third-party usage . . . is not granted with this license.")).  Third, unlike in *Oliver*, Plaintiff did not wait for years to object to Defendant's use of his photographs. Defendant purchased the properties from Atria in 2020 and 2021, (PSGD ¶ 14), and Plaintiff objected to the use of the disputed photographs on March 30, 2021, (*id.* ¶ 27), and filed suit in September of 2022, (Compl.).  Finally, this case does not involve a merger of two entities with a single survivor, but rather a sale of real property from one company to another.  As a result, Defendant fails to explain how Atria's license could vest in the subsequent owner of the property "by operation of law."  *Oliver*, 2022 WL 4132706, at *19.

Defendant has presented no evidence that it possessed an implied license to use Plaintiff's photographs.  Accordingly, its motion for summary judgment on this issue is DENIED.

### D.    Conclusion

Defendant's motion for summary judgment is GRANTED in part and DENIED in part.  No reasonable juror could determine that Defendant willfully infringed the 16 photographs identified in the ImageRights email.  Defendant is not entitled to summary judgment on any other issue presented in its motion.

## V.    PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT

### A.    Copyright Infringement

"To establish a prima facie case of copyright infringement, a plaintiff must show (1) ownership of a valid copyright and (2) violation by the alleged infringer of at least one of the exclusive rights granted to copyright owners by the Copyright Act."  *UMG Recordings, Inc. v. Augusto*, 628 F.3d 1175, 1178 (9th Cir. 2011).  The Copyright Act "establishes the exclusive rights vested in the owner of a copyrighted work, including the exclusive rights to reproduce the work, prepare derivative works, distribute copies of the work to the public, and to perform or display the work publicly."  *Firoozye v. Earthlink Network*, 153 F. Supp. 2d 1115, 1125 n.6 (N.D. Cal. 2001) (citing 17 U.S.C. § 106).

1           1.     *Plaintiff Has Presented Evidence Establishing Ownership of a Valid*

2                 *Copyright for 41 of the 43 Disputed Photographs*

3        The record includes copies of two registration statements from 2018 and 2019

4 identifying Plaintiff as the owner of the copyrights for the images listed in the

5 statements. (Naylor Decl. ¶ 6, ECF No 31-12; Registration Statements.) These

6 Registration Statements constitute prima facie evidence of Plaintiff's ownership of a

7 valid copyright for the works identified. *See* 17 U.S.C. § 410(c) ("In any judicial

8 proceedings the certificate of a registration made before or within five years after first

9 publication of the work shall constitute prima facie evidence of the validity of the

10 copyright and of the facts stated in the certificate."). "A certificate of copyright

11 registration, therefore, shifts to the defendant the burden to prove the invalidity of the

12 plaintiff's copyrights. "An accused infringer can rebut this presumption of validity" by

13 offering "evidence or proof to dispute or deny the plaintiff's prima facie case of

14 infringement." *Ets-Hokin v. Skyy Spirits, Inc.*, 225 F.3d 1068, 1076 (9th Cir. 2000)

15 (internal quotation marks omitted).

16        Defendant does not claim that any of the works listed in the Registration

17 Statements lack a valid copyright but instead argues that Plaintiff has failed to show that

18 several of the disputed photographs are covered by the Registration Statements. (Def.'s

19 Opp'n to Pl.'s Mot. 6–9.) Specifically, Defendant claims "the eight images that appear

20 on the Hargis/Atria Rancho Penasquitos invoice do not clearly appear on the copyright

21 registrations." (*Id*. at 8.) Defendant argues "[t]he images Plaintiff took for the Rancho

22 Penasquitos location and licensed to Atria are titled: 'hargis_180622_8072;

23 hargis_180622_8090;        hargis_180622_8100;        hargis_180622_8117;

24 hargis_180622_8152;        hargis_180622_8178;        hargis_180622_8206;

25 hargis_180622_8226' and 'retouching hargis_180622_8100.'" (*Id.* at 8–9 (citing Atria

26 Invoices).) Defendant points out that the July 2018 photographs listed on the

27 Registration        Statements        include:        "Atria_Rancho_Penasquitos8206,

28 Atria_Rancho_Penasquitos8226-2,   Atria_Rancho_Penasquitos8178,   Atria_Rancho

1    Penasquitos8152, Atria_Raneho_Penasquitos8090, Atria_Rancho Penasquitos8117,

2    [and] Atria_Raneho_Penasquitos8072." (*Id.* at 9 (citing Registration Statements)

3    (errors preserved).)

4         The slight variation in naming conventions in this case does not give rise to a

5    triable issue of fact sufficient to preclude summary judgment as to ownership. The four

6    terminal digits in both the Registration Statements and Atria Invoices are easily

7    matchable, a fact that Defendant acknowledges in its opposition to Plaintiff's motion.

8    (*See* Def.'s Opp'n to Pl.'s Mot. 9.) Further, dates identified in the Atria Invoices

9    correspond with those in the Registration Statements. For example, the invoice for the

10   Rancho Penasquitos location lists "8 images" and a date of "6/22/18." (Atria Invoices.)

11   The Registration Statements identify eight images with identical terminal digits, seven

12   of which use the name "Atria_Rancho_Penasquitos." (Registration Statements

13   SHP000141.) Each of these photographs were "published" in "July 2018," or a little

14   over a week after the date identified in the invoice. (*Id.*) Both the Registration

15   Statements and Atria Invoices were created years before this lawsuit arose, and there is

16   absolutely no reason to conclude the similarities were manufactured to support

17   Plaintiff's claims. Ultimately, the prospect that the similarities between the documents

18   are a product of sheer coincidence is simply too incredible for any rational juror to

19   believe.

20        Defendant also claims Plaintiff failed to establish proof of ownership of two of

21   the disputed photographs because "[t]here is no photo ending in '8100' or '8226'" in

22   the Registration Statements. (Def.'s Opp'n to Pl.'s Mot 9.) The Court is unsure how

23   Defendant reaches this conclusion with respect to the "8100" photograph, as there is a

24   photograph identified as "hargis_180622_8100" in both the Registration Statements

25   and the Atria Invoices. (Registration Statements SHP000141; Atria Invoices

26   SHP000006.) Defendant's argument with respect to the "8226" photo, however, is on

27   stronger footing. There is a photograph identified as Atria_Rancho_Penasquitos8226-

28   2 in the Registration Statements, but the Atria Invoices only identify an image titled

"hargis_180622_8226."       (Registration Statements SHP000141; Atria Invoices SHP000006.)  Plaintiff's supplementary declaration asserts that "[t]he appearance of '-2' at the end of the file name denotes that there are multiple versions of the same image" and "that 'hargis_180622_8226,' as set forth in the invoice, is in fact the same image as 'Atria_Rancho_Penasquitos8226-2,'" identified in the Registration Statements. (Suppl. Hargis Decl. ¶ 14, ECF No. 38-3.)  Although Plaintiff's explanation is plausible, a reasonable juror viewing the evidence in the light most favorable to the Defendant might discount the explanation and infer that the "-2" designation signals that the registered photograph is distinct from the one identified in the invoices.  Accordingly, the Court cannot conclude that "Atria_Rancho_Penasquitos8226-2" and "hargis_180622_8226" represent the same image.

Finally, Defendant argues that the disputed photograph of the Atria Burlingame location was "published in 2014 [and] therefore does not and cannot appear on the" Registration Statements, which were filed in 2018 and 2019.  (Def.'s Opp'n to Pl.'s Mot. 7.)  Plaintiff acknowledges this photograph is not included in the Registration Statements, and has accordingly withdrawn "his claim as to this Photo for purposes of his summary judgment motion."  (Pl.'s Reply 2–3.)

Viewing the evidence in the light most favorable to Defendant, the Court concludes that Plaintiff has established ownership of a valid copyright for 41 of the 43 disputed photographs.  Plaintiff has not presented sufficient evidence to establish ownership of a valid copyright for the disputed photograph of the Atria Burlingame location, and the photograph identified as "hargis_180622_8226" in the Atria Invoices.

## 2. *Defendant Violated Plaintiff's Exclusive Rights Under the Copyright Act*

As stated above, the Copyright Act "establishes the exclusive rights vested in the owner of a copyrighted work, including the exclusive rights to reproduce the work, prepare derivative works, distribute copies of the work to the public, and to perform or display the work publicly." *Firoozye*, 153 F. Supp. 2d at 1126 n.6 (citing 17 U.S.C.

§ 106).  In the context of copyright disputes, "[t]he word 'copying' is shorthand for the infringing of any of the copyright owner's five exclusive rights." *S.O.S., Inc. v. Payday, Inc.*, 886 F.2d 1081, 1085 n.3 (9th Cir. 1989).  "In the absence of direct evidence of copying, . . . the plaintiff can attempt to prove it circumstantially by showing that the defendant had access to the plaintiff's work and that the two works share similarities probative of copying." *Skidmore v. Led Zeppelin*, 952 F.3d 1051, 1064 (9th Cir. 2020) (internal quotation marks omitted).

Here, Plaintiff has provided direct evidence of copying.  Defendant does not dispute that 16 of Plaintiff's photos "had been reproduced, distributed, and publicly displayed, on two websites that Defendant owns, operates, and/or controls." (DSGD ¶ 13.)  Nor does Defendant dispute that as of January 2022, another set of 27 of Plaintiff's photographs were discovered on "websites in connection with the Encinitas, Chula Vista, San Diego, Burlingame, and Sterling locations." (*Id.* ¶ 28.)  Finally, Defendant does not dispute that at least five of the 27 disputed photographs "were on Defendant's website as of September 27, 2022.  (*Id.* ¶ 30.)

Rather than claim it did not copy the disputed photographs, Defendant argues that it obtained an implied license to use them.  (Def.'s Opp'n to Pl.'s Mot. 10–11.)  Defendant's argument is without merit.  Even drawing all inferences in favor of Defendant, the Court's analysis with respect to this issue remains the same as it was in the context of Defendant's motion for summary judgment.  Defendant again relies on *Oliver v. Meow Wolf, Inc.* to argue "[w]hen a party displays a copyrighted work in the same way the licensee displayed the work, and that display 'falls within the original scope of the license,' the license can vest in the second party." (Def.'s Opp'n to Pl.'s Mot. 10 (quoting *Oliver*, 2022 WL 4132706, at *19).)  The evidence in this case shows that Defendant's use of the disputed photographs clearly exceeded "the original scope of the license," *Oliver*, 2022 WL 4132706, at *19, since the licenses were "not transferable" and expressly prohibited "[t]hird-party usage," (Atria Licenses).  Further, as noted in *Oliver*, "[t]he touchstone for finding an implied license, according to the

*Effects Associates* framework, is intent," *id.* at *18 (cleaned up), and the undisputed evidence shows Plaintiff intended to license the disputed photographs only to Atria, (*see generally* Atria Licenses).

### 3. Conclusion

Plaintiff has presented sufficient evidence establishing ownership of the copyright in 41 of the 43 disputed photographs. Plaintiff has also established that Defendant "does not have enough evidence of an essential element of its . . . defense [i.e., that it obtained implied license] to carry its ultimate burden of persuasion at trial." *Fritz Cos., Inc.*, 210 F.3d at 1106. Accordingly, Plaintiff's motion for summary judgment as to Defendant's infringement is GRANTED with respect to all of the disputed photographs except for the photograph of the Atria Burlingame location and the photograph identified as "hargis_180622_8226" in the Atria Invoices.

## B. Innocent Infringement

Plaintiff moves for summary judgment that "Defendant's 'innocent infringement' defense is precluded as a matter of law" because "[e]ach of the Photos provided to Atria, and which were subsequently provided to Pacifica, featured a copyright notice, '© 2018 Scott Hargis Photo' in the metadata embedded therewith."[5] (*Id.* at 11.) To prove innocent infringement, a defendant must show that it was "not aware and had no reason to believe that [its] acts constituted an infringement of copyright." 17 U.S.C. § 504(c)(2). If a copyrighted work includes a notice of copyright placed in a "manner and location as to give reasonable notice of the claim of copyright," then "no weight shall be given to . . . a defendant's interposition of a defense based on innocent infringement in mitigation of actual or statutory damages." 17 U.S.C. § 401(c)–(d).

---

[5] Although Defendant claims "[i]t is unclear if Plaintiff is moving for summary judgment on said defenses or how these arguments relate to Plaintiff's motion as to liability and willfulness," it provided a response in its opposition brief. (Def.'s Opp'n to Pl.'s Mot. 11–12.)

1    Plaintiff cites no authority supporting the proposition that a copyright notice
2    contained in a photograph's metadata is affixed to the work in "manner and location as
3    to give reasonable notice of the claim of copyright," nor has the Court's research
4    uncovered one. *Id.* § 401(c). Further, even crediting Plaintiff's claims that he provided
5    the copyright notice in the metadata when the disputed photographs were transferred to
6    Atria, (DSGD ¶ 11); there is a factual question as to whether the data survived the
7    transfer of the photographs from Atria to Defendant, (*id.*; Def.'s Additional Material
8    Facts ¶ 6, ECF No. 35-6).

9    Viewing all facts in the light most favorable to Defendant, Plaintiff has not shown
10    that Defendant received the copyright notice in a manner that precludes a finding of
11    innocent infringement. Accordingly, Plaintiff's motion for summary judgment that
12    Defendant's defense of "innocent infringement" is precluded pursuant to 17 U.S.C.
13    § 401 is DENIED.

14        **C.    Willful Infringement**

15    Plaintiff claims he is entitled to summary judgment that Defendant's
16    infringement was willful because "an infringer's failure to conduct a modicum of due
17    diligence into a copyright holders' rights, as is the case here, evinces willful
18    infringement." (Pl.'s Mot. 12–13.)

19        1.    *Defendant Did Not Willfully Infringe the 16 Photographs Identified*
20                *in the ImageRights Email*

21    As discussed above in the context of Defendant's motion for summary judgment,
22    even viewing the evidence in the light most favorable to Plaintiff, no reasonable juror
23    could conclude that Defendant willfully infringed the 16 photographs identified in the
24    ImageRights email. Viewing the same evidence in the light most favorable to
25    Defendant, it should be clear that no reasonable juror could determine Defendant's
26    conduct amounted to willful blindness or reckless disregard for Plaintiff's rights.

27    ///

28    ///

1    2. *Plaintiff Has Shown That Defendant Willfully Infringed Five of the*
2      *27 Photographs in the "Second Infringing Set"*

3    With respect to the disputed photographs not identified in the ImageRights email,
4 Plaintiff claims to have discovered a "Second Infringing Set" of 27 disputed
5 photographs on Defendant's website in January 2022. (DSGD ¶ 28.) There is a dispute
6 as to whether Defendant received actual notice that Defendant lacked a right to display
7 these photographs. Plaintiff claims he "repeatedly attempted to resolve his claims with
8 Defendant short of litigation" but that Defendant "ignored his efforts." (DSGD ¶ 29.)
9 Defendant claims that "Plaintiff did not inform Pacifica of the 'Second Infringing Set'"
10 of disputed photographs. (*Id.*) Because Plaintiff cites no evidence that he informed
11 Defendant that the "Second Infringing Set" of disputed photographs was displayed on
12 its website, he has failed to show that Defendant had actual notice it was infringing on
13 Plaintiff's rights in these photos.

14    However, willful infringement may arise even without actual notice, and Plaintiff
15 argues that Defendant willfully infringed the disputed photographs in the "Second
16 Infringing Set" because following the ImageRights email it stuck "its head in the sand,
17 continuing to exploit over two dozen additional of Plaintiff's copyright[ed] works,
18 without once stopping to inquire whether it obtained the necessary rights." (Pl.'s Mot.
19 15.) This argument is borne out by the fact that by the time this lawsuit was filed,
20 Defendant had removed some of the disputed photographs from its websites but
21 continued to display photographs of the Sterling property. (Def.'s Opp'n to Pl.'s Mot.
22 15; *see also* DSGD ¶ 30.) This shows that, in the instances where Defendant actually
23 took steps to determine whether it had a right to display photographs of Atria properties,
24 it repeatedly concluded there was reason to believe it did not.

25    Consequently, at some point before this lawsuit was filed, Defendant had to have
26 been aware that there was a "substantial and unjustified risk" it was using photographs
27 of the Atria properties without proper authorization. *Kast*, 921 F.3d at 833 (internal
28 quotation marks omitted). If Defendant is to be believed, the fact that the purchase of

*one* Atria property did not include the attendant rights to use photographs of that property was a significant aberration from what was "expected and common in the industry." (Def.'s Opp'n to Pl.'s Mot 13; DSGD ¶ 18.)  By the time the lawsuit was filed, however, Defendant had discovered the same unusual issue had arisen in the purchase of at least *five other Atria properties*. (Def.'s Opp'n to Pl.'s Mot. 15.)  Stated differently, when this lawsuit commenced, Defendant had actual knowledge that the *same issue* had arisen *multiple times* across properties purchased from the *same seller*. Defendant's decision to remove 22 of the remaining disputed photographs from its websites is further evidence that by the time this lawsuit commenced, it had reason to suspect it lacked a right to use the disputed photographs.  In light of the pattern of "unique" licensing issues associated with the Atria properties, a reasonable trier of fact would be left with one conclusion: Defendant was aware it had a reason to "investigate or attempt to determine whether" the photographs of the Sterling property was "subject to copyright protections," but it failed to do so.  *Unicolors, Inc.*, 853 F.3d at 992. Consequently, the only reasonable conclusion to draw from these facts is that Defendant's "actions were the result of 'reckless disregard' for, or 'willful blindness' to, the copyright holder's rights." *Akanoc Sols., Inc.*, 658 F.3d at 944.

      Defendant unpersuasively argues that its conduct is analogous to the defendant's in *Zillow*, 918 F.3d 723. (Def.'s Opp'n to Pl.'s Mot. 16.)  In that case, the Ninth Circuit noted that the "continued use of a work even after one has been notified of his or her alleged infringement does not constitute willfulness so long as one believes reasonably, and in good faith, that he or she is not infringing." *Zillow*, 918 F.3d at 748 (cleaned up).  The court also concluded "that substantial evidence [did] not show Zillow was 'actually aware' of its infringing activity," and that "Zillow's belief that feed providers had properly licensed its uses and that its system effectively respected those rights was reasonable." *Id.* at 749.  Unlike the defendant in *Zillow*, however, Defendant could not possibly have maintained a *reasonable* belief that it had a right to use Plaintiff's photographs by the time the suit was filed.  Defendant's argument that it possessed an

*implied* license is flatly contradicted by the terms of the *express* licenses.  Further, its own conduct shows that it recognized the need to remove the disputed photographs from the websites of at least six other Atria properties by the time the suit was filed.  As a result, summary judgment is appropriate with respect to the five disputed photographs of the Sterling property.

As to the remaining 22 disputed photographs, the exact moment when Defendant had reason to suspect it lacked the rights to use the "Second Infringing Set" of disputed photographs is a question of fact that cannot be resolved on summary judgment.  A reasonable trier of fact could conclude that as soon as Defendant discovered it lacked the rights to use the disputed photographs at a single facility, it would have been aware "of a substantial and unjustified risk" it was infringing the copyrights of photographs of other facilities.  *Kast*, 921 F.3d at 833 (internal quotation marks omitted).  Others may reasonably conclude that it was only after discovering a pattern of issues that Defendant was aware of the risk.  What is more, if Defendant needed to perceive a pattern before its conduct constituted willful blindness or a reckless disregard for Plaintiff's rights, the record does not contain enough information to determine when this pattern was discovered.  (*See* Def.'s Opp'n to Pl.'s Mot. 15 (stating Defendant took "down all images from the six California locations it purchased from Atria" without providing a date).)  As a result, there is no way to determine on this motion the time at which Defendant first had sufficient notice to justify a finding of willful infringement.

Although it is clear that Defendant was aware of the "substantial and unjustified risk" of infringement by the time Plaintiff filed suit, *Kast*, 921 F.3d 822, 833 (internal quotation marks omitted), the Court cannot conclude that Plaintiff is entitled to summary judgment that Defendant willfully infringed the remaining 22 disputed photographs.

### D.    Conclusion

Plaintiff's motion is GRANTED in part and DENIED in part.

Plaintiff has established that he owns a valid copyright in 41 of the 43 disputed

1  photographs.  Plaintiff has also presented sufficient evidence to show that Defendant

2  infringed on at least one of his rights under the Copyright Act.  Accordingly, Plaintiff's

3  motion for summary judgment as to infringement is GRANTED with respect to the 41

4  disputed photographs for which Plaintiff has supplied proof that he owns a valid

5  copyright.

6      Plaintiff is not entitled to a determination that Defendant willfully infringed 38

7  of the 43 disputed photographs.  However, Plaintiff has presented sufficient evidence

8  showing Defendant's infringement of the five disputed photographs of the Sterling

9  location was willful.  Accordingly, Plaintiff's motion is GRANTED with respect to the

10  five disputed photographs of the Sterling location and DENIED as to all remaining

11  disputed photographs.

## VI.    DEFENSE COUNSEL'S MOTION TO WITHDRAW

13      "An attorney may not withdraw as counsel except by leave of court.  A motion

14  for leave to withdraw must be made upon written notice given reasonably in advance to

15  the client and to all other parties who have appeared in the action."  C.D. Cal. R. 83-

16  2.3.2.  "An attorney requesting leave to withdraw from representation of an organization

17  of any kind (including corporations, limited liability corporations, partnerships, limited

18  liability partnerships, unincorporated associations, trusts) must give written notice to

19  the organization of the consequences of its inability to appear pro se."  *Id.* 83-2.3.4.

20  Finally, "[u]nless good cause is shown and the ends of justice require, no substitution

21  or relief of attorney will be approved that will cause delay in prosecution of the case to

22  completion." *Id.* 83-2.3.5.

23      Although GRSM gave Defendant "adequate notice of their intention to move to

24  withdraw from this case," (Withdrawal Mot. 2), there is no evidence that they provided

25  "written notice to the organization of the consequences of its inability to appear pro se,"

26  C.D. Cal R. 83-2.3.4.  Further, because Defendant is a corporation and therefore cannot

27  proceed pro se, proceedings will stop until new counsel has been retained.  As a result,

28  withdrawal is likely to cause significant delay, especially given the imminence of trial.

Accordingly, the motion is denied without prejudice to renewal.[6]  If Defendant retains new counsel before a hearing on any renewed motion by GRSM, it may submit a Request for Approval of Substitution or Withdrawal of Counsel (Form G-01).

**VII.   CONCLUSION**

***Defendant shall submit declarations substantiating the Brown declaration's exhibits within seven days of the date of this Order***.  ***Failure to comply with this order will result in the imposition of financial and/or terminating sanctions.***

Defendant's motion for summary judgment is GRANTED in part and DENIED in part.  The Court determines that as a matter of law any infringement of the 16 photographs identified in the ImageRights email was not willful.  Factual disputes preclude the Court from determining whether any infringement of the remaining 27 photographs was willful.  Defendant's motion for a determination that there are only seven "works" in this case and that it obtained an implied license is DENIED.

//

///

///

---

[6] The Court authorizes any renewed motion to be set for hearing after the motion hearing cut-off but no later than September 25, 2023.

Plaintiff's motion for summary judgment is GRANTED in part and DENIED in part. The Court determines as a matter of law that Defendant does not possess an implied license to use any of the photographs, that Defendant infringed on Plaintiff's copyright of the 41 disputed photographs for which Plaintiff has provided proof that he owns a valid copyright, and that Defendant willfully infringed the five disputed photographs of the Sterling location. Plaintiff is not entitled to summary judgment that Defendant's innocent infringement defense is precluded under 17 U.S.C. § 504(c)(2), or that Defendant willfully infringed 22 of the 27 disputed photographs in the Second Infringing Set.

Defendant's counsel's motion to withdraw is DENIED.

**IT IS SO ORDERED.**

Dated: August 2, 2023

_____
MARK C. SCARSI
UNITED STATES DISTRICT JUDGE